Matthew BROWNING, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A02–0203–CR–255.

Court of Appeals of Indiana.

Oct. 7, 2002.

David W. Stone, IV, Stone Law Office & Legal Research, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Matthew Browning appeals his conviction of Criminal Deviate Conduct[1] and Attempted Rape,[2] both class A felonies, and the determination that he is a repeat sex offender. Browning presents several issues for review, one of which is dispositive of the appeal. Accordingly, we address only that issue, which is: Did the trial court err in admitting evidence of Browning's prior bad acts?

We reverse and remand.

The facts favorable to the convictions are that A.B. was a student at Anderson University in Anderson, Indiana. At approximately 8:30 p.m. on June 21, 2000, she was jogging on the school's lighted track. While she was running around the track, she saw a man running on the sidewalk outside of the track. A moment later, the man fell in behind Browning on the track. She told the man that it was crazy to be running in the rain and he agreed with her. Shortly thereafter, he grabbed A.B. and struggled to force her to the ground. Although she resisted, the man eventually succeeded in pulling her to the ground. Once on the ground, the man physically attempted to remove A.B.'s clothing and demanded that she remove them herself. A.B. continued to struggle against her attacker, clawing his face and

---

1. Ind.Code Ann. § 35–42–4–2 (West, PREMISE through 2001 1st Reg. Sess.).

2. IC § 35–42–4–1 (West, PREMISE through 2001 1st Reg. Sess.).

gouging his eyes. She also kicked him in the groin, but with little effect.

Her assailant told A.B. that "all that he wanted was [her] pussy and that [she] could either take it that way or [she] could take it in the ass." *Transcript* at 87. He also told her that he would drag her away from there and kill her if she did not cooperate. A.B. did not cooperate and the assailant continued his efforts to remove her clothes. He finally managed to unbutton her shorts, but could not remove them because A.B. remained curled up in a fetal position. At some point, the attacker rolled A.B. over so that he was on top of her when she was face down, still curled up in a fetal position. While in this position, he stuck one of his fingers into her rectum. A.B. began praying loudly and asking God to forgive her attacker. Shortly thereafter, the attacker abruptly got up and walked away. The entire attack lasted approximately five minutes.

As soon as she was sure the man left, A.B. ran to a nearby dormitory and reported the incident. The Anderson Police Department and Anderson University security personnel were notified. She was shown a photo array two days later but was unable to identify her attacker among those photos.[3] Approximately five months later, A.B. viewed another array and that time immediately identified the photo of Browning as that of her assailant. Browning was charged and convicted as set forth above. Other facts will be provided where relevant.

 Browning contends that the trial court erred in admitting evidence of other bad acts committed by him. The trial court admitted the disputed evidence under Rule 404(b) of the Indiana Rules of Evidence. That rule provides that evidence of other misconduct may not be admitted to prove that the defendant acted in conformity with a certain character trait, such as sexual violence. The rule's purpose is to "prevent the jury from assessing a defendant's present guilt on the basis of his past propensities...." *Allen v. State*, 720 N.E.2d 707, 711 (Ind.1999) (quoting *Hicks v. State*, 690 N.E.2d 215, 218 (Ind.1997)). Nevertheless, evidence of other bad acts may sometimes be admissible under that rule for other purposes, such as proof of identity. Evid. R. 404(b); *Allen v. State*, 720 N.E.2d 707.

 The State asserted at trial that evidence of the other bad acts committed by Browning was admissible to prove his identity as the perpetrator in this case. "The identity exception in Rule 404(b) was crafted primarily for crimes so nearly identical that the modus operandi is virtually a 'signature.'" *Allen v. State*, 720 N.E.2d at 711 (quoting *Thompson v. State*, 690 N.E.2d 224, 234 (Ind.1997)). The rationale underlying this exception is that the modus operandi of the instant crime and the other bad acts are so similar and unique in nature that it is highly probable that the same person committed all of them. *Allen v. State*, 720 N.E.2d 707. Crimes that are only generally similar do not qualify under this exception. *Berry v. State*, 715 N.E.2d 864 (Ind.1999).

 The evidence of the other bad acts to which Browning objects included the following:

(1) In 1999, Anderson University student Cara Warfield was going to the school track in her running clothes at about 11:00 a.m. when Browning drove up to her in a van. Browning asked Warfield if she would like to make some extra money. When she asked how, Browning responded, "give me head." *Exhibits*, State's Exhibit 13 at 2. When Warfield declined, Browning said, "well, just watch." *Id.*

3. A photo of Browning was not included in the array.

Browning approached Warfield again in September of 2000, this time late at night, and asked her if she wanted to make some money. Warfield recognized Browning from the previous encounter and walked away, but not before recording the license number of the van he was driving.

(2) At about 2:30 p.m. on September 13, 1999, Anderson University student Ashley Lester was walking on the campus of Anderson University when Browning drove up to her in a blue van. Browning asked her to help him. Lester could not understand what Browning was saying, so she approached his van. When she did, she saw that he was masturbating. Lester reported the incident to Anderson University security personnel.

(3) Anderson University student Alyssa Henderson testified that at 10:30 or 11:00 p.m. on an evening in September 2000, she was walking on the Anderson University campus when Browning approached her driving a red truck. Browning struck up a conversation that quickly turned sexual in nature. He asked Henderson if she would like to have sex with him, and when she declined, he exposed himself. She ran to her dorm and reported the incident.

(4) At about 10:30 p.m. on September 11, 2000, Anderson University student Melissa Coats was walking on the campus when Browning approached her in a blue van. Browning stopped the van, got out, and told Coats to "get over there" and called her profane names. *Transcript* at 175. At the same time, Browning lowered his pants and began masturbating. Coats ran to her dorm and reported the incident.

(5) At about 11:10 p.m. on September 12, 2000, Anderson University students Shannon White and Joy Nalywaiko were jogging on the Anderson University campus when Browning approached them driving a blue van. Browning began yelling at them and demanding "come suck my cock." *Transcript* at 184. The two wom-

en ran away and reported the incident to Anderson University security personnel. All of the women eventually picked Browning's photo from an array prepared by the Anderson Police Department.

The State contends that the aforementioned evidence was admissible to prove identity because of the similarities between those incidents and the attack upon A.B. Those similarities include 1) all of the incidents took place within a two-block area on the Anderson University campus; 2) all of the victims were white females between the ages of eighteen and twenty-one, and all were similar in size; 3) all of the victims were approached while they were either walking or jogging; 4) all of the approaches were sexual in nature; and 5) all of the incidents occurred within a one-year period of time.

■ Although there are certainly striking similarities among the "other" incidents in question, the same cannot be said when comparing those incidents with the attack upon A.B. In fact, the incident involving A.B. bore little resemblance to the others. The perpetrator did not approach A.B. while he was in a vehicle, but instead on foot. A.B.'s attacker's initial approach was not accompanied by sexual comments. A.B.'s assailant did not expose himself. Finally, and most significantly, the incident involving A.B. was the only one involving a physical attack. In view of these significant differences, the similarities pointed out by the State can fairly be described as only general in nature. Thus, we conclude that the similarities are not sufficiently distinctive to make evidence of the other crimes admissible under Rule 404(b). Moreover, because the evidence of the other crimes was not relevant to any matter other than Browning's propensity to commit crimes, it was not admissible under Rule 404(b). The trial court erred in admitting evidence of the other bad acts under that rule.

Not all errors in admitting evidence under Rule 404(b) require reversal. Such errors will be deemed harmless "if [their] probable impact on the jury, in the light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." *Berry v. State*, 715 N.E.2d at 867 (quoting *Fleener v. State*, 656 N.E.2d 1140, 1142 (Ind.1995)); *see also* Ind. Trial Rule 61.

The steady drumbeat of the evidence pertaining to Browning's other bad acts repeatedly reminded the jury that Browning was a person of bad character. *See James v. State*, 622 N.E.2d 1303 (Ind. Ct.App.1993). Although such evidence was not the only evidence of guilt, and perhaps was not even the primary evidence upon which the State relied, it was by no means inconsequential. Thus, we cannot say with confidence that such repetitive references did not contribute to the verdict. Indeed, considering the sheer volume of that evidence in comparison with the balance of the State's case-in-chief, it is likely that it did impact the jury's deliberations. The effect of the trial court's admission of such evidence was to "overpersuade the jury that [Browning] had a bad general record and to deny him a 'fair opportunity to defend against [the] particular charge.'" *James v. State*, 622 N.E.2d at 1310 (quoting *Michelson v. United States*, 335 U.S. 469, 476, 69 S.Ct. 213, 93 L.Ed. 168 (1948)). Accordingly, the convictions cannot stand.

Having determined that evidence of prior bad acts was improperly admitted into evidence and that Browning was prejudiced thereby, the question of whether Browning may be subjected to a new trial depends upon an analysis of the sufficiency of the evidence. *Berry v. State*,

725 N.E.2d 939 (Ind.Ct.App.2000). When deciding whether retrial is permissible, we will consider all of the evidence admitted by the trial court, including the erroneously admitted evidence. *Id.* If, viewed as a whole, that evidence would have been sufficient to sustain the judgment, retrial would not offend double jeopardy principles. If the evidence is insufficient, however, Browning cannot be retried. *Id.*

When considering a challenge to the sufficiency of the evidence, we neither reweigh evidence nor judge witness credibility. Looking only to the evidence and reasonable inferences that support the verdict, we must decide whether there is evidence of probative value from which a reasonable trier of fact could infer guilt beyond a reasonable doubt. *Carter v. State*, 754 N.E.2d 877 (Ind.2001), *petition for cert. filed*, (April 17, 2002) (No. 01–10000). In the case of a sex crime, a conviction for rape can rest solely on the uncorroborated testimony of the victim. *Id,*

In the instant case, A.B. unequivocally identified Browning as her attacker. Moreover, her testimony does not stand alone, but finds some corroboration in the injuries observed on Browning's face shortly after the attack.[4] The evidence was sufficient to support the convictions, therefore retrial would not offend double jeopardy principles. This case is remanded for a new trial.

Reversed and remanded.

SHARPNACK, J., and NAJAM, J., concur.

---

4. On June 22, 2000—the day after the attack—Browning's employer observed that he had scratches on his face and a swollen eye.