Rayshawn WINBUSH and Derrick D. Russell, Appellants–Defendants,

v.

STATE of Indiana, Appellee.

No. 48A02–0110–CR–717.

Court of Appeals of Indiana.

Oct. 28, 2002.

David W. Stone IV, Anderson, for Appellant.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, J.

Rayshawn Winbush and Derrick Russell ("Defendants") appeal their respective convictions for Possession of Cocaine With Intent to Deal, Class A felonies,[1] and Dealing in Cocaine, Class B felonies,[2] following their joint trial by jury. They jointly present several issues for our review, which we consolidate and restate as: whether evidence was improperly admitted over objec-

---

1. Ind.Code § 35-48-4-6 (Burns Code Ed. Supp.2002).

2. Ind.Code § 35-48-4-1 (Burns Code Ed. Supp.2002).

tion. Russell also presents solely for his appeal the issue of whether the trial court properly ruled that his sentence was non-suspendable. Winbush presents for appeal the issue of whether his sentence was manifestly unreasonable.

We affirm.

A review of the evidence reveals that Alicia Hilliard was contacted by Detective Kevin Earley of the Madison County Drug Task Force to work as a paid confidential informant in February or March of 2001. Hilliard had provided Detective Earley with information on previous cases involving the selling of crack cocaine. On March 22, Hilliard and Detective Earley set up a buy in which Hilliard was given $150 to purchase crack cocaine from Defendants. Hilliard was taken in an unmarked car by Detective Clifford Cole to the home of Eddie Rollins, where Defendants were staying. While there, Hilliard purchased crack cocaine from Winbush, whom she referred to as "B." Hilliard then returned to the car, following which a field test was performed by Detective Earley indicating that the item purchased was crack cocaine.

Detective Earley, with the assistance of Officer Jake Brooks, then obtained a search warrant, which was executed at Rollins's residence the same evening in which the buy took place. Upon entering the residence, the officers took Defendants into custody. During a search of the home, the officers found bags containing crack cocaine, several items of drug paraphernalia, and two lots of money. One lot of money, which contained the buy money, was located in the bathroom in which Russell was found. The other lot of money was found in the pocket of Winbush's pants during a pat down search.

## I

### Admission of Evidence

Defendants contend that the trial court improperly allowed into evidence a state-ment made by Hilliard to Detective Earley during the initial investigation of the drug dealing. They also assert that it was error to admit into evidence the search warrant issued for the search of Rollins's residence and several items of drug paraphernalia which were found in the home.

The decision to admit or exclude evidence is a matter within the sound discretion of the trial court. *Pickens v. State,* 764 N.E.2d 295, 297 (Ind.Ct.App.2002), *trans. denied.* An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* Even if the trial court erred in admitting evidence, we will not reverse a conviction if the error is harmless. *Bonner v. State,* 650 N.E.2d 1139, 1141 (Ind.1995). Error in the admission of evidence is disregarded unless it affects the substantial rights of a party. Ind. Trial Rule 61; *Simmons v. State,* 760 N.E.2d 1154, 1160 (Ind.Ct.App. 2002). We assess the probable impact of the improperly admitted evidence upon the jury in determining whether the defendant's substantial rights were prejudiced. *Bonner,* 650 N.E.2d at 1141. The improper admission of evidence is harmless when the conviction is supported by substantial independent evidence of guilt sufficient to satisfy the reviewing court that there is no substantial likelihood that the improperly admitted evidence contributed to the verdict. *Id.*

### A. Statement From Informant

Defendants contend that the trial court erred in allowing Detective Earley to testify about information he had received from Hilliard regarding prior criminal acts committed by Defendants. Detective Earley testified, "Approximately a week prior to the 22nd Ms. Hilliard called me and said a

subject by the name of 'B' and a subject by the name of 'D' were at an apartment located at 1504 West 9th Street here in Anderson selling crack cocaine." Transcript at 274. Counsel objected upon grounds that the information was hearsay, was evidence of prior bad acts under Indiana Evidence Rule 404(b), and violated Indiana Evidence Rule 403. The objection was overruled upon the grounds that the information received from the informant, Hilliard, was being used to explain the officer's conduct in pursuing the investigation.

In *Craig v. State*, 630 N.E.2d 207, 211 (Ind.1994), our Supreme Court articulated the analysis to be utilized when the admissibility of an out-of-court statement received by a police officer during the course of an investigation is challenged as hearsay. The court must first determine whether the testimony describes an out-of-court statement asserting a fact susceptible of being true or false. The court then must consider the evidentiary purpose for the proffered statement. If the evidentiary purpose is to prove the fact asserted, and the statement is neither from a witness nor from a party as described in Indiana Evidence Rule 801(d), and there are no applicable hearsay exceptions, the statement is inadmissible as hearsay. If the statement is offered for a purpose other than to prove the truth of the matter asserted, the court should consider whether the fact to be proved is relevant to some issue in the case and whether the danger of unfair prejudice which may result from its admission outweighs its probative value. *See also Mason v. State*, 689 N.E.2d 1233, 1237 (Ind.1997).

■ The statement that the Defendants had been selling crack cocaine at an apartment in Anderson was a fact susceptible of being true or false. However, there was little relevance of this statement to any

item at issue in the trial. The defendants were not contesting the quality or validity of the investigation, and defense counsel offered to stipulate "that [Detective] Earley and his colleagues do excellent police work." Tr. at 273. The statement also referenced an alleged criminal act at a location different than that at which the acts occurred for which the Defendants were charged. This clearly demonstrates that the risk of unfair prejudice was high compared to the relatively low probative value of the use of the statement. Because the statement lacked relevance to any contested issue at trial, and the probative value was substantially outweighed by any unfair prejudice, the statement should not have been admitted at trial. *See Mason*, 689 N.E.2d at 1237 (holding that to extent statement offered by police officer was relevant at all, it was not to a contested issue and was improperly admitted based upon the relatively low probative value and the risk of unfair prejudice); *Bonner*, 650 N.E.2d at 1141 (holding that out-of-court statements lacked relevance to any contested issue other than the matters asserted therein, and must be viewed as irrelevant or as hearsay and their admission was improper).

### B. Search Warrant

■ During the trial, the State sought to introduce the search warrant which was issued for a search of the residence where the controlled buy took place. Counsel for both defendants objected challenging the relevancy of the warrant, arguing that juries do not play a role in issuing warrants or determining whether there is probable cause for them. Nevertheless, the trial court admitted the search warrant into evidence.

In *Guajardo v. State*, 496 N.E.2d 1300 (Ind.1986), our Supreme Court addressed the admissibility of a search warrant and

probable cause affidavit. After determining that the State was obligated to introduce the search warrant and probable cause affidavit into evidence after the adequacy of the warrant was challenged, our Supreme Court then determined that the warrant and probable cause affidavit should have been presented only to the trial court because they had no bearing on any issue before the jury. *Id.* at 1303.[3] The Supreme Court stated, "These documents pertain only to the admissibility of evidence obtained under the warrant and that determination is a matter for the court, not the jury." *Id.* Our Supreme Court further noted that there is no reason for the trier of fact to view the probable cause affidavit or the search warrant, particularly since they often contain statements highly prejudicial to the defendant. *Id.*

In this case, no challenge was made to the validity of the search warrant. In the absence of such challenge, it was unnecessary for the warrant to be admitted into evidence. It had no bearing upon any decision to be made by the jury. Based upon the decision in *Guajardo* and Defendants' objections, we hold that it was improper for the warrant to be introduced into evidence for consideration by the jury. However, the admission of the warrant does not result in reversible error per se because a showing of prejudice is required.[4] *Id.*

### C. Drug Paraphernalia

Defendants also contend that the trial court erred in allowing the admission of drug paraphernalia which was seized at the residence at the time the search warrant was executed. They assert that the evidence only proved that Defendants were at a crack house and that the evidence had no link to them.

A foundation for physical evidence is established where (1) a witness can testify that the exhibit is "like" an item associated with the crime, and (2) there is a showing that the exhibit is connected to the defendant and the commission of the crime. *Malone v. State*, 700 N.E.2d 780, 782 (Ind.1998). To be admissible, real evidence must only constitute a small but legitimate link in the chain of the evidence connecting the defendant to the crime. *Id.* Evidence may be admitted even where there is only a slight tendency that it connects the defendant to the crime. *Id.*

The State does not assert in reply that the paraphernalia was used by Defendants. Instead, the State contends that the evidence was properly admitted because it "tend[ed] to connect Winbush and Russell with the crime by way of reasonable inferences." Appellee's Brief at 10. In support, the State notes that Mitchell testified that she had smoked crack cocaine that evening and that either Winbush or Russell gave the crack cocaine which she smoked to Rollins.

While there may be a tenuous link between the fact that Defendants possessed crack cocaine and that Mitchell smoked crack cocaine at the residence, we do not believe that it is sufficient to establish even the slightest link which is necessary to be admissible into evidence to indicate guilt on the part of Defendants. There was no indication that the Defendants used any of the drug paraphernalia which was found, and no testimony was provided which indicated that Defendants knew of its presence. No testimony was provided which indicated that the drug paraphernalia was

---

3. It may be noted that in the case before us neither the adequacy of the warrant nor the existence of probable cause for its issuance was challenged.

4. Prejudice will be addressed more generally in a harmless error analysis under subpart D.

used by Mitchell or Rollins to smoke the crack cocaine which Defendants apparently had left for them. The evidence did no more than establish that Defendants were at a known crack house, a fact which was brought before the jury at trial. The drug paraphernalia should not have been admitted into evidence.[5]

### D. Harmless Error Analysis

Although it was error for the trial court to admit all of the evidence discussed above, the errors were harmless. There was substantial independent evidence upon which the jury could rely in determining that Defendants committed the crimes with which they were charged. Banita Mitchell testified that she saw Defendants with bags containing crack cocaine at the home on the night in which the police raid took place. She further testified that she saw Defendants make several drug transactions that evening, with most of the transactions being made by Russell. Rollins testified that Defendants asked him for a place to stay, and his belief was that they needed a place in order to sell crack cocaine. Rollins also testified that he saw Russell with what he believed to be crack cocaine. Hilliard testified that she was given $150 by a police officer to make a purchase, that she gave the money to Winbush, and that Winbush reached behind a chair and handed her the crack cocaine. Rollins's son testified that he saw Defendants with "little white rocks" and that Russell made several transactions in which he would hand the little white rocks to different people and they would give him money. Tr. at 148. Detective Brooks testified, that at the time of the raid, he saw Russell get up from a chair, look out the window, and run to the interior of the house. Behind that chair, Detective Brooks found what appeared to be crack cocaine. Results from lab tests conducted on several samples of items—which appeared to be crack cocaine—recovered from the house by the police and by Hilliard during the buy indicated that the substances were cocaine. Based upon the substantial evidence provided by the testimony of the witnesses indicating the guilt of Defendants and the fact that Hilliard was able to make a buy and the buy money was found at the residence, we conclude that there was sufficient evidence to convict Defendants and that the improperly admitted evidence did not impact the jury's verdict.

▬▬ Defendants also challenge the credibility of the witnesses and state that the improperly admitted evidence "shored up" the credibility of the witnesses, thereby allowing the jury to believe the witnesses. Appellants' Brief at 10. However, while the witnesses themselves may have indeed had drug problems and Hilliard had been paid as a confidential informant, determining the credibility of the witnesses is a task which is properly within the province of the jury, not this court. *See Duren v. State,* 720 N.E.2d 1198, 1201 (Ind.Ct.App.1999), *trans. denied.* In this case, the jury was made fully aware of the issues which called into question the credibility of the witnesses and the jury apparently chose to believe the witnesses in light of the substantial evidence indicating the guilt of Defendants.

## II

### Ameliorative Statute

The doctrine of amelioration allows a defendant to be sentenced under the more

---

5. While the presence of drug paraphernalia would be necessary had Defendants been charged with Possession of Paraphernalia, here, they were not. The introduction of the paraphernalia into evidence could only bear upon guilt of the Defendants only if the jury associated the paraphernalia with these Defendants and with the crimes of which they were convicted.

lenient provisions of a statute which is in effect at the time of sentencing rather than be sentenced under a more harsh statute in effect at the time the offense was committed. *Richards v. State*, 681 N.E.2d 208, 213 (Ind.1997). The doctrine is applicable when the legislature intended that the statute as amended apply to all persons to whom such application would be possible and constitutional. *Hellums v. State*, 758 N.E.2d 1027, 1029 (Ind.Ct. App.2001). "To determine whether the doctrine of amelioration is applicable in a specific case, we examine whether the amended statute is more lenient than its predecessor and whether the defendant was sentenced after the effective date of the amended statute." *Id.*

■ Russell claims that the trial court erred in sentencing him according to the language of Ind.Code § 35–50–2–2 which was in effect at the time that Russell committed the crime for which he was convicted, and not according to the amended language which was in effect at the time of his sentencing. The previous version of the statute [6] prohibited a trial court from suspending any portion of a sentence in excess of the minimum sentence if the felony committed was dealing in cocaine as a Class A felony under Ind.Code § 35–48–4–1. However, as Russell correctly asserts, the version of the statute in effect at the time he was sentenced prohibited a trial court from suspending that part of the minimum sentence which is in excess of the minimum in only a subset of convictions for dealing in cocaine.[7] In this case, Russell was sentenced for a Class A felony for possessing at least three grams of cocaine, a condition which is not included in the current version of the suspension statute. Therefore, the trial court would not have been prohibited from suspending part of the minimum sentence if the amended version of the statute was applicable at Russell's sentencing.[8]

Because the amendment would have allowed the trial court to suspend part or all of Russell's minimum sentence, the amended statute would appear to be ameliorative according to the generally accepted definition of ameliorate: "to make better." *See* BLACK'S LAW DICTIONARY 80 (7th ed. 1999); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 67 (1976). However, case law has interpreted an amendment to a statute to be ameliorative only if the maximum penalty under the new version of the statute is shorter than the maximum penalty under the old version of the statute. *Hellums*, 758 N.E.2d at 1029.

This principle has been upheld by this court in two previous challenges by defendants who have sought to have their mini-

---

**6.** I.C. § 35–50–2–2(b)(4)(O) (Burns Code Ed. Repl.1998).

**7.** Indiana Code § 35–50–2–2(b)(4)(O) (Burns Code Ed. Supp.2002) prohibits the suspension of the minimum sentence when the crime of dealing in cocaine was committed while the person possessed a firearm, or a person delivered or intended to deliver to a person under the age of eighteen and three years junior to the person and was on a school bus or within one thousand feet of school property, a public park, a family housing complex, or a youth program center.

**8.** Indeed, it appears that the trial court would have suspended at least a portion of Russell's minimum sentence as indicated by his words at sentencing. After discussing whether or not the amendment was applicable in Russell's case with the Prosecutor, Judge Spencer noted that he was not sure whether the doctrine of amelioration would be applicable and that he was not sure how this court would rule. He then made clear for the record that he was sentencing Russell to the minimum sentence with all twenty years executed, but that "if the Court of Appeals says yes it is suspendable," he would "revisit the issue at that time." Transcript at 642.

mum sentences reduced by asking this court to apply the amended version of the statute which was in effect at their sentencing and not the version which was in effect at the time the crime was committed. In *Dowdell v. State*, 166 Ind.App. 395, 336 N.E.2d 699 (1975), this court determined that an amended statute was not ameliorative because while it reduced the minimum sentence that the defendant could receive, it also raised the maximum penalty for the commission of the crime. Likewise, in *State v. Turner*, 178 Ind.App. 562, 383 N.E.2d 428 (1978), this court determined that an amended statute could not be ameliorative because the maximum penalty for the crime remained the same under the amendment and would not speculate as to the possible variances in the duration of sentencing which would be brought about because of the change in the statute. In both cases, the defendant failed to receive the relief which would have been provided under the amended statute.

In a similar vein, our Supreme Court chose not to apply the doctrine of amelioration in a case in which our General Assembly legalized the action which had been conducted by a business which was determined to be in violation of Indiana law requiring it to operate with a permit issued by the Indiana Department of Environmental Management. *Indiana Dept. of Envtl. Mgmt. v. Medical Disposal Servs., Inc.*, 729 N.E.2d 577 (Ind.2000). While noting that both the trial court and the court of appeals had relied heavily upon the fact that the General Assembly had amended the Indiana Code and specifically made the act undertaken by Medical Dis-

posal Services, Inc. ("MDSI") legal, the Court determined that the amendment did not relieve MDSI of the obligation it faced at the time prior to the amendment in which it had been found to have violated the law. *Id.* at 581.

In light of the principle that the doctrine of amelioration is to apply when the statute as amended is more lenient in sentencing than its predecessor, it is difficult for this court to determine that Russell should not receive the advantage of reduced incarceration which would be available to him under the amended version of the statute. However, we are bound by those cases in which the courts of this State have declined to expand the doctrine of amelioration beyond application in only those instances in which a maximum sentence is reduced.[9] While it would seem logical that the doctrine of amelioration be applied in this case, as Russell would have received a more lenient sentence, we may not expand its application until authorized to do so by our Supreme Court.

## III

### Manifestly Unreasonable Sentence

■ A sentence which is authorized by statute will not be revised unless it is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B);[10] *Buchanan v. State*, 767 N.E.2d 967, 972–73 (Ind.2002). Courts should initially focus upon the presumptive sentence when considering the appropriateness of the sentence for the crime committed. *Hildebrandt v. State*, 770 N.E.2d 355, 361 (Ind.

9. In *Richards v. State, supra,* the Supreme Court held "clearly ameliorative" a statute which reduced the maximum aggregate sentences which could be imposed consecutively for crimes committed arising from a single criminal episode.

10. On July 19, 2002, our Supreme Court amended Appellate Rule 7(B) effective January 1, 2003. As of that date the criterion for sentence revision will be that the sentence "is inappropriate in light of the nature of the offense and character of the offender."

Ct.App.2002), *trans. denied.* Trial courts may then consider deviation from the presumptive sentence based upon a balancing of the factors which must be considered pursuant to Ind.Code § 35–38–1–7.1(a) together with any discretionary aggravating and mitigating factors found to exist. *Id.*

The presumptive sentence for a Class A felony is thirty years, with the allowance of an additional twenty years for aggravating circumstances. Ind.Code § 35–50–2–4 (Burns Code Ed. Repl.1998). The presumptive sentence for a Class B felony is ten years with up to ten years added for aggravating circumstances. Ind.Code § 35–50–2–5 (Burns Code Ed. Repl.1998). Here, Winbush was sentenced to forty-five years for the Class A felony with forty years executed and five years suspended and to fifteen years for the Class B felony, with the sentences to run concurrently.

■ In support of his contention that his sentence is manifestly unreasonable, Winbush quotes at length from several drug related cases in which it was held that the sentence imposed upon the defendant was manifestly unreasonable. However, our concern in reviewing a sentence is not solely focused upon what has occurred in other cases or whether there may be a hypothetical defendant who could have committed a much worse act. Instead, our focus is more appropriately directed to the nature, extent, and depravity of the offense for which the defendant is being sentenced and what it reveals about that individual's character. *Cf. Brown v. State,* 760 N.E.2d 243, 247 (Ind.Ct.App. 2002) (stating that the maximum sentence enhancement should be reserved for the very worst offenses and offenders and that in determining whether an individual is among the worst offenders, we should focus less upon comparing the facts of the present case to other cases, whether real or hypothetical, and focus more upon the nature, extent, and depravity of the offense), *trans. denied.*

■ In sentencing Winbush, the trial court found that his prior criminal history was an aggravating circumstance. The trial court noted that while his prior criminal history was not extensive, it involved two prior convictions in other states for the sale of an illegal substance. In fact, a review of the pre-sentence investigation report indicates that Winbush was convicted in 1999 of Possession of a Controlled Substance in Kentucky and was ordered to serve four years and was wanted on a warrant for escaping from the jail in which he was serving his sentence. The presentence investigation report also indicates that Winbush was charged with Possession of Cocaine in Ohio in August of 2000, and that he was wanted on a warrant for failing to appear for sentencing. Given the nature of the prior offenses which Winbush has committed and the fact that this is his third conviction in four years relating to controlled substances, we do not find that his sentence is manifestly unreasonable.

The judgment of the trial court is affirmed.

BAILEY, J., and MATHIAS, J., concur.