**Chong HERNANDEZ, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 20A05–0206–CR–256.

Court of Appeals of Indiana.

March 19, 2003.

Kenneth R. Martin, Goshen, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Chong Hernandez appeals her convictions of two counts of promoting prostitution,[1] and one count of corrupt business influence,[2] all Class C felonies, raising several issues for review, one of which we find dispositive: whether the police captain's testimony about prior complaints of prostitution was properly admitted to show the course of the police investigation. Because we reverse Hernandez's convictions, we address the following issue: whether the evidence was sufficient to sustain her convictions. Finally, because it is likely to recur on retrial, we address Hernandez's contention that a lease extension agreement and a rent check were inadmissible because the danger of unfair prejudice from them substantially outweighed their probative value.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment show that while working undercover, Detective Michael Baldini of the Elkhart County Drug Task Force went to the Oriental Health Spa on September 24, 2000 and talked with Hernandez, who greeted him. Baldini learned that the price for a massage was $60 per hour. Three days later, he returned to the establishment to get a massage. He was again greeted by Hernandez, and he inquired as to who was available to give the massage. Hernandez brought out another woman and said either of the two could perform the massage. Baldini asked that the other woman, "Lena," give the massage. Lena led him to a massage room where he paid her $60 and removed his clothes at her direction. What began as a massage lasting about twenty minutes progressed to Lena performing a sexual favor on Baldini at his request. Afterwards, he inquired as to whether he owed her money, and she indicated that he could tip her if he liked it. Baldini did so and dressed, and Lena then escorted him out of the room.

---

1. *See* IC 35–45–4–4.

2. *See* IC 35–45–6–2.

On October 5, 2000, Baldini again returned to the Oriental Health Spa, and was again greeted by Hernandez. He requested that Lena give his massage, and Hernandez led him to a massage room. Baldini undressed, and Lena came in. He gave her $60, and she again bathed him and laid him face down on the massage table and began massaging his back for about a minute. She then began massaging his buttocks and his penis, rolled him over, and performed a sexual favor. He asked her if she wanted money, she said, " 'Yes, that'd be nice,' " *Transcript of May 8–9* at 130, and Baldini paid her twenty dollars.

After Baldini's third visit to the establishment, Hernandez was arrested and charged with three counts of promoting prostitution and one count of corrupt business influence. A jury convicted her of two counts of promoting prostitution[3] and corrupt business influence, and she now appeals.

## DISCUSSION AND DECISION

At the trial, Captain Larry Towns, Coordinator of the Elkhart County Drug Task Force, testified that he began an investigation of the Oriental Health Spa after he received complaints about prostitution connected with the business. The trial court denied Hernandez's motion to strike the testimony based on hearsay and overruled her relevancy objection, but instructed the jury that the testimony was not admitted to establish the truth of the facts asserted in the complaint but only to show what led Towns to further his investigative efforts. Hernandez maintains that Towns' testimony about prior complaints of prostitution was improperly admitted to show the course of his investigation and that the trial court's limiting instruction did not cure the defect.

When the admissibility of an out-of-court statement received by a police officer during the course of an investigation is challenged as hearsay, the court must first determine whether the testimony describes an out-of-court statement asserting a fact susceptible of being true or false. *Craig v. State*, 630 N.E.2d 207, 211 (Ind.1994); *Winbush v. State*, 776 N.E.2d 1219, 1222 (Ind.Ct.App.2002), *trans. denied* (2003). If the statement contains no such assertion, it cannot be hearsay and the objection should be overruled. *Craig*, 630 N.E.2d at 211. The court then must consider the evidentiary purpose for the proffered statement. *Id.; Winbush*, 776 N.E.2d at 1222. If the evidentiary purpose is to prove the fact asserted, and the statement is neither from a witness nor from a party as described in Ind. Evidence Rule 801(d), and there are no applicable hearsay exceptions, the statement is inadmissible as hearsay. *Craig*, 630 N.E.2d at 211; *Winbush*, 776 N.E.2d at 1222. If the statement is offered for a purpose other than to prove the truth of the matter asserted, the court should consider whether the fact to be proved is relevant to some issue in the case and whether the danger of unfair prejudice which may result from its admission outweighs its probative value. *Craig*, 630 N.E.2d at 211; *Winbush*, 776 N.E.2d at 1222.

"Consideration of the relevance of the fact sought to be proved under the proffered non-hearsay purpose is essential to a proper ruling upon the objection. Relevance is the tendency to make a fact of consequence to the determination of the action more or less probable. If the fact sought to be proved under the suggested non-hearsay purpose is not relevant, or it is relevant but its danger of unfair prejudice substantially outweighs

3. The trial court did not submit the third   count of promoting prostitution to the jury.

its probative value, the hearsay objection should be sustained."

*Craig*, 630 N.E.2d at 211 (citations omitted). This rationale is applicable in analyzing the admissibility of any otherwise inadmissible evidence that the State argues is admissible because it merely describes the course of police investigation. *Maxey v. State*, 730 N.E.2d 158, 162 (Ind. 2000).

In *Craig*, 630 N.E.2d at 211–12, a child molesting case, the defendant contested the admission of the testimony of a police officer describing an out-of-court statement of the victim's mother that two weeks after the visitation with the defendant, the boy told his mother that the defendant molested him. The State argued that the purpose of the testimony was not to prove the facts asserted, but to prove that the mother made a report and to explain why the police investigated as they did. The court observed, however, that the specific content of the mother's report to the police officer was not a contested issue, nor was there a significant issue raised with respect to the propriety of the decision of the police to investigate the report. The court concluded that neither the mother's statement, nor that of the victim as repeated by the mother, had any conceivable relevance apart from proving the facts asserted in the statements and was therefore erroneously admitted. Nonetheless, because of the other substantial evidence of the defendant's guilt, the court ultimately concluded that the admission of the statements was harmless error. *Id.*

Similarly, in *Maxey*, 730 N.E.2d at 161–62, the defendant argued that the trial court improperly admitted evidence, over hearsay and relevance objections, that he was apprehended out of state. There, a detective testified that he obtained information that the defendant had left the area

and gone to Tennessee. The State offered the evidence as the detective's recount of the course of his investigation.

Our supreme court noted that this information would be hearsay if offered to prove that defendant had gone to Tennessee and that these statements asserted facts susceptible of being true or false, that is, that the defendant had gone to Tennessee. Therefore, it proceeded to the next step to consider the evidentiary purpose of the testimony.

Because the claimed purpose of the testimony was to show the course of the police work, the court next considered whether the evidence of the detective's course of police work was relevant to some issue in the case and whether any danger of prejudice in admitting this evidence outweighed its probative value. The court concluded that the probative value of this evidence in showing the course of police work was extremely low because the defendant's apprehension in Tennessee was not a contested issue in the case, but that the testimony was extremely relevant as circumstantial evidence of the central issue in the case, the defendant's guilt. The court noted that the trial court repeatedly admonished the jury that the detective's testimony was not being offered as evidence but to show the course of the investigation, but concluded that the danger of unfair prejudice might very well exceed any probative value of the evidence, regardless of a trial court's repeated and strong admonishments to a jury. Ultimately, the court evaluated other non-hearsay evidence of the defendant's apprehension in Tennessee and concluded that any error with regard to the admission of the evidence was harmless. *Id.*

Finally, in *Winbush*, 776 N.E.2d at 1221–22, the defendants argued that the trial court erred in allowing a detective to testify about information he received re-

garding their prior criminal acts. The detective testified that he received a report a week prior to the crime that the defendants were selling crack cocaine from a specified location. The defendants objected on grounds that the information was hearsay, was evidence of prior bad acts under Ind. Evidence Rule 404(b), and violated Ind. Evidence Rule 403. The objection was overruled on the grounds that the information was being admitted to explain the officer's conduct in pursuing his investigation of the defendants.

On appeal, we first noted that the statement that the defendants had been selling crack cocaine was a fact susceptible of being true or false and that this statement was of little relevance to any point at issue in the trial. We commented that the defendants were not contesting the validity of the investigation and offered to stipulate to the quality of the police work in this case. We further observed that the statement referenced an alleged criminal act at a location different than that at which the acts occurred for which the defendants were being tried, and therefore the risk of unfair prejudice was high compared to the relatively low probative value of the statement. We concluded that because the statement lacked relevance to any contested issue at trial, and the probative value was substantially outweighed by any unfair prejudice, the statement should not have been admitted at trial. *Id.* at 1222. *See also Ealy v. State,* 685 N.E.2d 1047, 1056 (Ind.1997) (evidence that detective learned that "Philco" was involved in crime and that defendant was known by that name was irrelevant to any issue in case other than defendant's involvement in crime and was therefore inadmissible); *Clark v. State,* 728 N.E.2d 880, 885 (Ind.Ct.App. 2000), *trans. denied* (detective's statement that he received a report alleging child abuse was not improperly admitted because it was not offered to prove the truth of the matter asserted, but to explain why detective interviewed child's mother and defendant).

■ Here, Captain Towns was permitted to testify over Hernandez's hearsay and relevancy objections that he received complaints about prostitution with regard to the Oriental Health Spa. Applying the three-step test, Towns' statement contained a fact susceptible of being true or false, namely that the Oriental Health Spa was a venue for prostitution. As proffered by the State, the evidentiary purpose of this evidence was to show the course of the investigation. However, the genesis of the investigation was not relevant to any contested issue in this case. Hernandez did not question the propriety of the police's investigation of the spa. We conclude that the relevance, if any, of this evidence was slight. On the other hand, the prejudicial impact was great. Hernandez was on trial for promoting prostitution, and the statement in question asserted that her business was engaged in prostitution. Thus, the relevance of the statement was substantially outweighed by the danger of unfair prejudice. Accordingly, we hold that the admission of the evidence was error.

■ Reversal for the erroneous admission of hearsay evidence is appropriate where the evidence caused prejudice to the defendant's substantial rights. *Craig,* 630 N.E.2d at 211. In determining whether error in the introduction of evidence affected the defendant's substantial rights, we must assess the probable impact of that evidence upon the jury. *Id.* The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt sufficient to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction. *Cook v. State,* 734 N.E.2d 563,

569 (Ind.2000). A reversal may be compelled if the record as a whole discloses that the erroneously admitted evidence was likely to have had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict. *Taylor v. State,* 735 N.E.2d 308, 312 (Ind.Ct.App. 2000), *trans. denied.*

■ After reviewing the record before us, we cannot conclude that the error in the admission of the evidence was harmless. Unlike in *Maxey,* no properly admitted evidence conveyed the same information as the evidence in question here, and unlike in *Craig,* the other evidence of Hernandez's guilt was not overwhelming. Hernandez was charged with promoting prostitution by knowingly providing a place for prostitutes to ply their trade. Evidence that the business was known as a place of prostitution almost certainly contributed to the jurors' conclusion that Hernandez knew that acts of prostitution were occurring in addition to the legal massage services that women such as Lena provided. We therefore reverse Hernandez's convictions.

■ Because we reverse her convictions, we must determine whether the evidence of the charges was sufficient to permit retrial. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Due Process Clause of the Fourteenth Amendment, generally does not bar a retrial on the same crimes where the reversal is due to error in the admission of evidence. *Greenboam v. State,* 766 N.E.2d 1247, 1257 (Ind.Ct.App. 2002), *trans. denied.* However, double jeopardy forbids a retrial if the reviewing court concludes that the evidence is legally insufficient to support the conviction. *Id.*

■ Therefore, the question of whether a defendant may be subjected to a new trial depends upon an analysis of the sufficiency of the evidence. *Browning v. State,* 775 N.E.2d 1222, 1226 (Ind.Ct.App. 2002). When deciding whether retrial is permissible, we consider all of the evidence admitted by the trial court, including the erroneously admitted evidence. *Lockhart v. Nelson,* 488 U.S. 33, 109 S.Ct. 285, 287, 102 L.Ed.2d 265 (1988). If, viewed as a whole, that evidence would have been sufficient to sustain the judgment, retrial would not offend double jeopardy principles. *Id.* If the evidence is insufficient, however, the defendant cannot be retried. *Browning,* 775 N.E.2d at 1226.

IC 35–45–4–4(3) provides that a person who, having control over the use of a place, knowingly or intentionally permits another person to use the place for prostitution commits promoting prostitution, a Class C felony. "Prostitution" is the performance, offer or agreement to perform sexual intercourse, deviate sexual conduct or fondling of the genitals of another person for money or other property. IC 35–45–4–2.

In *Wright v. State,* 456 N.E.2d 733, 734–35 (Ind.Ct.App.1983), the defendant contended that the evidence was insufficient to support her conviction for prostitution. In that case, the evidence showed that a police officer visited a modeling agency. When he entered the building, the defendant told him that he could get an upper body massage for thirty dollars. After the officer paid that amount, he was led to a room where he undressed. When the defendant joined him in the room, the officer asked about a lower body massage. The defendant told him that a lower body massage was available for an extra tip, and the officer gave her twenty-five dollars. The defendant massaged the officer's lower body and fondled his genitals.

■ The defendant contended that she did not receive any of the money paid in advance of the session and that the pay-

ment of the tip only enabled the officer to choose her apparel and was not renumeration for fondling his genitals. We noted the officer's testimony that he gave the defendant a tip for a lower body massage and the sequence of events: after receiving the money, the defendant performed the fondling. We concluded that the evidence was sufficient to support the defendant's conviction. *Id.*

In this case, we find the evidence that the September incident was an act of prostitution to be insufficient. The parties had not discussed sexual favors prior to the beginning of the massage, and even after performing the favor at Baldini's request, Lena did not ask for money. Rather, Baldini testified that he was the first to broach the subject of money, and Lena merely responded that he could pay her if he liked her. Based on this evidence, we cannot conclude that a reasonable trier of fact could infer that Lena fondled Baldini's genitals in exchange for money.

However, when Baldini returned to the Oriental Health Spa for the second time and again asked for Lena to give him a massage, a reasonable trier of fact could conclude based on their previous encounter that Lena understood that the arrangement included the performance of a sexual favor. Moreover, the evidence indicated that while the first massage lasted twenty minutes, the second massage progressed to a sexual favor after only a minute.

Further, the State introduced evidence that Hernandez had control over the premises. Hernandez was present each time Baldini visited the spa, greeted him, and facilitated the transaction. She was also present when the police went to the premises to serve the search warrant and had the keys to the business in her possession. Accordingly, we find the evidence that Hernandez promoted prostitution as alleged in Count II sufficient to permit retri-

al without offending the prohibition on double jeopardy.

Hernandez was also convicted of a violation of IC 35-45-6-2 by knowingly or intentionally participating in the activities of an enterprise through a pattern of racketeering activity. A necessary element for proof of this crime is the establishment of a pattern of racketeering activity. *Wojtowicz v. State*, 545 N.E.2d 562, 564 (Ind.1989). Because the State may retry Hernandez on only one count of promoting prostitution, there is no evidence of a pattern of activity. Thus, there is insufficient evidence of corrupt business influence to retry Hernandez on this count as well.

Finally, we address another issue because it is likely to recur on retrial. At trial, during the testimony of Lena Howard, the property owner, the State sought to introduce into evidence the lease extension agreement of the Oriental Health Spa and a rent check. Hernandez objected on foundational grounds because Howard testified that the check was dropped off at her office or mailed, that she did not know Hernandez's name prior to her last appearance in court, and that she did not know whether Hernandez signed the check. She further testified that she never met the person who signed the lease extension, and that the execution of that document was done by mail, but that she maintained a copy of the agreement in her business records. Hernandez argued that there was no evidence to show who signed the documents, no connection to Hernandez, and no way to identify her signature. The trial court sustained the objection. The State then argued that the lease extension was admissible under the business records exception to the hearsay rule, and the trial court overruled the objection and held it admissible under the business records exception. It then admitted the rent

check over Hernandez's foundation objection. The trial court gave a limiting instruction that the lease was not admitted as proof that the defendant signed them, but to establish the basis upon which the Oriental Health Spa occupied the premises and that the rent check was admitted for "the purpose of establishing that this check was submitted as rent for the month of November, 2000, and successfully negotiated by the landlord." *Transcript of May 8–9* at 59.

Hernandez argues that the prejudicial impact of her apparent signature on the rent check and lease extension agreement was not cured by the trial court's limiting instruction. Under Ind. Evidence Rule 401, any evidence that is relevant is admissible, and evidence having any tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence is relevant. Here, the rent check and the lease extension agreement were relevant to the location and operation of the Oriental Health Spa. Nonetheless, Ind. Evidence Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." In this case, the possibility of undue prejudice exists because Hernandez's apparent signature appears on both. However, Roosevelt Wall is named as the owner of the spa on the lease extension, and neither document designates Hernandez as owner or manager. Furthermore, the probative value of the evidence to establish the operation of the Oriental Health Spa on the premises is high. Thus, we conclude that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Moreover, the trial court gave

a limiting instruction. When limiting instructions are given that certain evidence be considered for only a particular purpose, the law will presume that the jury will follow the court's admonitions. *Columbian Rope Co. v. Todd,* 631 N.E.2d 941, 946 (Ind.Ct.App.1994), *trans. dismissed.* The exhibits were properly admitted.

Reversed and remanded for retrial on Count II.

SULLIVAN, J., and SHARPNACK, J., concur.