# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MICHAEL R. FISHER**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Feb 24 2014, 9:16 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

SHAWN BLOUNT,                               )
                                            )
    Appellant-Defendant,            )
                                            )
      vs.                   )    No. 49A02-1304-CR-365
                                            )
STATE OF INDIANA,                           )
                                            )
    Appellee-Plaintiff.             )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
Cause No. 49G20-1211-FB-76812

**February 24, 2014**

**OPINION - FOR PUBLICATION**

**DARDEN, Senior Judge**

## STATEMENT OF THE CASE

After a jury trial, Shawn Blount was convicted of Class B felony possession of a firearm by a serious violent felon. We reverse and remand.

## ISSUE

Blount presents two issues, but we find one dispositive: whether the trial court abused its discretion by admitting hearsay evidence.

## FACTS AND PROCEDURAL HISTORY

In November 2012, Detective Terry Smith of the Indianapolis Metropolitan Police Department was in an unmarked vehicle conducting surveillance at the Best Inn at 4505 South Harding Street due to several complaints of prostitution and open air narcotics activity in the area. Shortly before 11:00 a.m., Detective Smith saw two black males exit the motel. One man was wearing a grey sweatshirt, and the other man was wearing a black hoodie. The man in the black hoodie continued down a sidewalk while the man in the grey sweatshirt waved to someone behind Detective Smith's vehicle and walked in that direction. A woman walked along the side of Detective Smith's vehicle and met up with the man in the grey sweatshirt, and the two then went down the same path as the man in the black hoodie.

Five to ten seconds later, Detective Smith heard yelling. He saw the woman and the man in the grey sweatshirt quickly walking away from a corner of the building and looking back a couple of times. He then saw the man in the black hoodie step out with his arm extended downward at a forty-five degree angle. Detective Smith was twenty-five to thirty-five yards from the corner, and his view of the man in the black hoodie was

2

somewhat obscured as he observed him through a chain-link fence. Further, Detective Smith saw only the outline of the man's body due to brush and weeds around the chain-link fence, but he had a clear view from the man's chest up. He saw a muzzle flash and heard a gunshot, though he did not actually see a gun.

Detective Nicholas Andrews, who was conducting surveillance just south of the parking lot at a different motel, called Detective Smith and confirmed there was a gunshot. They met up, put on their tactical vests, and ran into the motel. By that time, 911 calls had come in saying that the suspect had run into Room 150. As they approached that room, a woman Detective Smith knew as Ricky Brock exited it and ran up the stairs. The detectives found no one in Room 150.

They then followed Brock's path up the stairs, and someone directed them to Room 240. They knocked and announced themselves, and although they heard a lot of commotion in the room, no one answered the door. The detectives forced entry and found Brock, her five-year-old son, and two other females. Brock provided them with the nickname of the person she believed fired the weapon, "Big D." Her son named the same person.

The search for the suspect was unsuccessful. Detective Smith went to the location where he saw the gun being fired and recovered a spent round from a hole in the ground.

During the investigation that day, Detective Andrews was able to obtain an actual name, Shawn Blount, from the nickname Brock and her son had provided. He created a photo array and showed it to Detective Smith, who identified Blount's picture as the

person who fired the gun. A warrant was issued, and Blount was arrested about a month later. A firearm was never recovered.

The State charged Blount with Class B felony possession of a firearm by a serious violent felon. At a jury trial, Detectives Smith and Andrews testified on behalf of the State. Over defense objection, Detective Smith testified that Brock and her son provided him with the nickname of the person they believed fired the gun. Blount testified in his own defense that a man named "Bigs," who was shorter than him but stocky, was also at the scene, was angry over a debt, and fired at Blount's feet from half an arm's length away. On cross examination, he acknowledged that Brock was his girlfriend.

The jury found Blount guilty as charged, and the trial court later sentenced him to twelve years. Blount now appeals his conviction.

## DISCUSSION AND DECISION

Blount contends the trial court abused its discretion by admitting hearsay evidence when it allowed Detective Smith's testimony concerning what Brock and her son told him as to their belief about who fired the gun. A trial court has broad discretion in ruling on the admissibility of evidence, and we will disturb its rulings only where it is shown that the court abused that discretion. *Turner v. State*, 953 N.E.2d 1039, 1045 (Ind. 2011). "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Subject to certain limited and specific exceptions, hearsay is generally not admissible at trial. *See* Ind. Evidence Rule 802.

4

When the admissibility of an out-of-court statement received by a police officer during the course of an investigation is challenged as hearsay, we first determine whether the testimony describes an out-of-court statement that asserts a fact susceptible of being true or false. *Hernandez v. State*, 785 N.E.2d 294, 298 (Ind. Ct. App. 2003), *trans. denied*. If the statement contains no such assertion, it cannot be hearsay. *Id.* If the statement does contain such an assertion, we consider the evidentiary purpose for the proffered statement. *Id.* If the evidentiary purpose is to prove the fact asserted, the statement is from neither a witness nor a party as described in Indiana Evidence Rule 801(d), and there are no applicable hearsay exceptions, the statement is inadmissible hearsay. *Id.* If the statement is offered for a purpose other than to prove the truth of the matter asserted, we consider whether the fact to be proved is relevant to some issue in the case and whether the danger of unfair prejudice that may result from its admission outweighs its probative value. *Id.*

Here, it is undisputed that neither Brock nor her son testified at trial. Over Blount's objection, Detective Smith testified as to the following:

A    We found Ricky Brock, her four year old son. I believe four or five year[ ] old son . . . . And two other females.
Q    Okay. Did you find the defendant or either one of --- anybody that you were looking for?
A    We did not.
Q    Okay. And did you have a conversation with Ricky Brock or that child?
A    Yes.
Q    And what --- what --- did they give you any information that le[d] you to --- to further investigate at all?
A    Yes, Miss Brock stated ---
        [DEFENSE COUNSEL]: Objection, hearsay.
        [THE STATE]: I believe at this point, Your Honor, we are

5

offering what she stated to explain how the officers eventually get to their identification.

THE COURT: Any response?

[DEFENSE COUNSEL]: If the officer makes his identification based on vi[ew]in' a suspect that's one thing. If he makes his identification based off of the statements of a third person who is not here, that's hearsay[.] So those statements made by somebody else to help him with his identification, those can['t] be presented into evidence[.] However if he makes an identification by saying he saw Blount at the scene, that's fine.

[THE STATE]: Your Honor. If I --- I'm sorry.

THE COURT: Go ahead.

[THE STATE]: If I may, the key to whether or not its hearsay is whether or not the State is trying to offer what she said as the truth of the matter asserted. We are not even offering what she said as the truth. But ultimately what she said goes to how the officers eventually learned the name of the defendant and therefore was able to compare the picture of the defendant to what he already knew this person looked like.

THE COURT: I guess there's no reason for him to say anything now is there. Have him say that, I guess. He doesn't need to say what the witness told him. Just, based on what she told me something like that. [H]e doesn't have to offer her words.

[THE STATE]: We can do it and --- and in general terms I can try to get him to say it in general terms.

THE COURT: I would rather you do it in general terms. As opposed to offering her direct statements.

[THE STATE]: Okay.

DIRECT EXAMINATION CONTINUED:
QUESTIONS BY [THE STATE]

Q      Did . . . [Brock] provide you with the nickname of someone that you believed had fired the weapon?

A      Yes, she did.

[DEFENSE COUNSEL]: Objection. Still hearsay because . . . now you are tryin' to introduce her statement as to who she thinks fired the weapon.

THE COURT: He can answer the question, yes or no.

DIRECT EXAMINATION CONTINUED:
QUESTIONS BY [THE STATE]

Q      And I'm sorry officer, just in case the jury didn't hear you. Did she provide you with a nickname of somebody that she believed fired the weapon?

A      Yes, she did.

6

Q    Okay, and did . . . the four or five year old as well say the same person?
A    Yes.

Tr. pp. 74-77. Blount claims this evidence was hearsay because Detective Smith testified that Brock and her son told him the name of the shooter.

The State makes two counterarguments. First, it argues the testimony was not hearsay because Detective Smith did not relate any actual statement from Brock or her son. Instead, the State argues, Detective Smith merely stated that Brock and her son provided a nickname, without even specifying what that nickname was.

However, the fact that Detective Smith did not testify to Brock and her son's exact words does not save the testimony from a hearsay challenge. Because his testimony described out-of-court assertions susceptible of being true or false, namely, that the person Brock and her son identified was the shooter, they constitute statements within the meaning of the hearsay rule.

Second, the State argues the testimony was not hearsay because it was not offered to prove the truth of the matter asserted but was instead offered merely to show the course of the investigation. The hearsay rule does not require exclusion of police testimony regarding out-of-court statements by third parties when it is introduced primarily to explain why a particular course of action was taken during a criminal investigation. *Williams v. State*, 544 N.E.2d 161, 162 (Ind. 1989). Nonetheless, "[w]hen approving the admission of such testimony, this Court requires a reasonable level of assurance that such testimony was not offered by the proponent nor received by the trier of fact as evidence of the truth of the third party's statement." *Id.* at 162-63. We have

recently observed that course-of-investigation evidence is generally irrelevant in that it does not make it more or less probable that the defendant committed the act alleged. *See Kindred v. State*, 973 N.E.2d 1245, 1252-1255 (Ind. Ct. App. 2012) (collecting cases), *trans. denied*.

Here, as at trial, the State claims any statements made by Brock and her son were only offered to show how Detective Smith was eventually able to identify Blount as the shooter. Specifically, Brock and her son provided the nickname of the person they believed to be the shooter, Detective Andrews connected that nickname to Blount, he created a photo array with Blount's picture, and Detective Smith identified that picture as the person he saw shooting the gun.

However, the Indiana Supreme Court has rejected course-of-investigation testimony as inadmissible hearsay in a case similar to the facts before us. In *Williams*, a detective testified, "I received information, in October, from an informant, that an Ernest Williams [the defendant], a Black male, was involved in the robbery of a Village Pantry on the southside of Indianapolis." 544 N.E.2d at 163 (emphasis omitted). The detective further testified that based on this information, he included Williams's picture in a photo array shown to the victim. The victim picked out Williams's picture as the person who robbed her. The Supreme Court acknowledged that the testimony explained the course of the investigation, but it nonetheless concluded that it was inadmissible hearsay. It determined that the testimony was sufficiently specific and detailed to provide the jury with a basis for making inferences that the informant, who did not testify at trial, had knowledge that Williams committed the offense and that Williams was therefore guilty of

8

robbery. The Court also noted that the hearsay testimony tended to support the credibility of the victim when she identified Williams as the perpetrator. Concluding the error was not harmless, the Court reversed Williams's conviction. *Id.*

The State argues that Blount's case is "significantly different" from *Williams*. Appellee's Br. p. 11. Unlike *Williams*, the State claims, Detective Smith did not testify to any statement but merely said that Brock and her son provided a nickname. As we determined above, however, Detective Smith clearly testified to a statement when he said that Brock and her son told him the nickname of the shooter.

The State also claims *Williams* is distinguishable because the informant there told the detective that Williams was involved in the robbery, while Brock and her son told Detective Smith the nickname of the person they only *believed* to be the shooter. *See id.* ("[T]he detective merely testified that the nickname given was that of someone who Ricky believed had fired the weapon, not anyone she *knew* had fired the weapon."). This is a distinction without a difference. In *Williams*, the detective testified that the informant identified the robber. Likewise, here, Detective Smith testified that both Brock and her son identified the shooter.

How the police narrowed the investigation to Blount was irrelevant to any contested issue in the case. Moreover, the prejudicial impact of the testimony was great: in a jury trial to determine whether Blount unlawfully possessed a firearm, Detective Smith related out-of-court statements asserting that Blount possessed a firearm. Any probative value to the statements were thus substantially outweighed by the danger of

unfair prejudice. We therefore conclude that Detective Smith's testimony was inadmissible hearsay and that the trial court abused its discretion by admitting it.

When a trial court errs in the admission of evidence, we will not reverse the conviction if that error was harmless. *Turner*, 953 N.E.2d at 1058. Errors in the admission of evidence are to be disregarded unless they affect the defendant's substantial rights. *Id.* at 1059. In determining the effect of the evidentiary ruling on a defendant's substantial rights, we look to the probable effect on the fact-finder. *Id.* The improper admission is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction. *Id.*

The State argues the error was harmless because Detective Andrews later testified without objection to "essentially" the same evidence. Appellee's Br. p. 12. We disagree. Detective Andrews's testimony did not mention any assertions made by Brock and her son. *See* Tr. pp. 148, 162 (Detective Andrews testifying broadly that he obtained the shooter's nickname through the course of the investigation). Thus, his testimony was not merely cumulative of the erroneously admitted evidence.

The State also argues the error was harmless because Detective Smith had already identified Blount as the shooter to the jury. *See* Appellee's Br. p. 13 (noting Detective Smith's testimony that Blount was the man he saw when he observed the muzzle flash and heard the gunshot and that he picked Blount's picture from the photo array, further noting Detective Smith's positive in-trial identification of Blount). We disagree. As in *Williams*, 544 N.E.2d at 163, the erroneously admitted hearsay evidence of Brock and her

10

son buttressed Detective Smith's credibility when he identified Blount as the shooter. We thus cannot say there is no substantial likelihood the challenged evidence contributed to the conviction.

The State points to no other evidence supporting its claim that the admission of Detective Smith's hearsay testimony was harmless. We therefore conclude its admission was not harmless and reverse Blount's conviction. The State is not precluded from retrying Blount for this offense. *See Stahl v. State*, 686 N.E.2d 89, 94 (Ind. 1997) ("[I]f all the evidence, even that erroneously admitted, is sufficient to support the jury verdict, double jeopardy does not bar a retrial on the same charge.").

## CONCLUSION

We reverse Blount's conviction and remand for further proceedings consistent with this opinion.

ROBB, J., concurs.

KIRSCH, J., dissents without opinion.