**Donald DIXON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0612–CR–1160.

Court of Appeals of Indiana.

July 12, 2007.

William F. Thoms, Jr. Thoms & Thoms, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

VAIDIK, Judge.

### Case Summary

Donald Dixon ("Dixon") appeals his conviction for invasion of privacy as a Class A misdemeanor. Dixon contends that his conviction should be reversed because the trial court abused its discretion by admitting hearsay testimony and because there is insufficient evidence to sustain his conviction. Finding that the trial court did not abuse its discretion and that there was sufficient evidence for the trial court to reasonably find Dixon guilty of invasion of privacy, we affirm.

### Facts and Procedural History

On July 17, 2006, a trial court issued an *ex parte* order for protection against Dixon on behalf of his wife, Demetrice Bruno

("Bruno"), which ordered Dixon to "stay away from the residence" of Bruno. State's Ex. 1, p. 3. On October 13, 2006, police officer Alfredo Gomez ("Officer Gomez") was dispatched to Bruno's residence at 12:22 a.m., where he found Dixon and Bruno engaged in a verbal dispute. Officer Gomez performed a warrant check on both parties and discovered that Bruno had filed a protective order against Dixon but that Dixon had not yet been served with the order. Bruno presented a copy of the protective order to Officer Gomez and told him that she had previously given Dixon a hard copy of the order. Officer Gomez then advised Dixon that he had been served with a protective order and that he was not to come back to Bruno's residence. Officer Gomez did not arrest Dixon.

That same day, at 9:54 p.m., Officer Gomez was called back to the same address, where Dixon and Bruno were again arguing in the kitchen. Officer Gomez arrested Dixon, who continued to act boisterously after being handcuffed.

The State charged Dixon with Count I, Invasion of Privacy as a Class A misdemeanor;[1] Count II, Criminal Trespass as a Class A misdemeanor;[2] and Count III, Disorderly Conduct as a Class B misdemeanor.[3]

During a bench trial, Officer Gomez testified:

Q. So you confirmed that there was a Protective Order in place. What happened after you found out there was a Protective Order in place [?]

A. Miss Bruno showed me a hard copy of the Protective Order against Mr. Dixon. I then confirmed the information with our Communication saying that there was one on file but it has not been served.

Q. And what did you do after you found out that it hadn't been served?

A. Once I asked Miss Bruno if Mr. Dixon had received a hard copy. She advised ——

DEFENSE: Objection Your Honor, hearsay. COURT: Sustained

STATE: It's not being offered for the truth of the matter asserted Your Honor. It's being offered to show what the Police Officer did in the course of his investigation.

COURT: Why he did what he did.

STATE: Right.

COURT: Overruled then. It will go to the merits of the case.

STATE: Correct[.]

A. I asked Miss Bruno if she had given Mr. Dixon a hard copy. She stated yes. At that point I advised Mr. Dixon that he has been served with a Protective Order. That he's not to come back to this location.

Tr. p. 7–8. The trial court found Dixon guilty of invasion of privacy and disorderly conduct, and not guilty of criminal trespass. Dixon now appeals his conviction for invasion of privacy.

### Discussion and Decision

On appeal, Dixon first argues that the trial court abused its discretion by admitting hearsay testimony when it allowed Officer Gomez to testify that Bruno told him she had given Dixon a copy of the protective order. Dixon also contends that there is insufficient evidence to sustain his conviction for invasion of privacy because he did not have sufficient notice of the protective order against him and because

1. Ind.Code § 35–46–1–15.1.

2. Ind.Code § 35–43–2–2.

3. Ind.Code § 35–45–1–3.

Bruno consented to the violation of the protective order. We disagree.

## I. Admission of Testimony

■ First, Dixon argues that the trial court abused its discretion by admitting Officer Gomez's testimony because it was hearsay. The admission of evidence is within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Cox v. State*, 774 N.E.2d 1025, 1026 (Ind.Ct.App.2002). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In determining the admissibility of evidence, the reviewing court will only consider the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. *Id.*

■ Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). When the admissibility of an out-of-court statement received by a police officer during the course of an investigation is challenged as hearsay, the court must first determine whether the testimony describes an out-of-court statement asserting a fact susceptible of being true or false. *Hernandez v. State*, 785 N.E.2d 294, 298 (Ind.App.Ct.2003), *trans. denied.* If so, the court must then consider the evidentiary purpose for the proffered statement. *Id.* If the evidentiary purpose is to prove the fact asserted, the statement is inadmissible as hearsay. *Id.* If the statement is offered for a purpose other than to prove the truth of the matter asserted, the court should consider wheth-

er the fact to be proved is relevant to some issue in the case and whether the danger of unfair prejudice that may result from its admission outweighs its probative value. *Id.*

■ Here, Officer Gomez's testimony concerning Bruno's statement that she had given Dixon a copy of the protective order was not offered to prove the truth of the matter asserted. That is, Officer Gomez's testimony was not offered to show that Dixon had been served with the protective order. Rather, it was offered to describe Officer Gomez's course of action on his first visit to the home, namely that he informed Dixon of the protective order but did not arrest him.

Therefore, the issue turns to whether the danger of unfair prejudice that may have resulted from admission of Officer Gomez's testimony outweighed the probative value of the testimony.[4] We note that a trial judge is presumed to know the intricacies of the rules of evidence. *King v. State*, 155 Ind.App. 361, 292 N.E.2d 843, 846–47 (Ind.Ct.App.1973). As such, we presume that the trial court judge considered the evidence only for the purpose for which it was admitted. Thus, we presume here that the trial court considered the testimony only to explain Officer Gomez's course of action. As a result, this evidence was not unfairly prejudicial and was properly admitted.

## II. Sufficiency of the Evidence

■ Next, Dixon argues that the State presented insufficient evidence to sustain his conviction for invasion of privacy. In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment, and neither reweighing the evi-

---

**4.** On appeal, Dixon does not raise the issue of whether the fact to be proved by Officer Go- mez's testimony was relevant to some issue in the case.

dence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Robertson v. State*, 765 N.E.2d 138, 139 (Ind.2002), *reh'g denied.*

A person who knowingly or intentionally violates a protective order commits invasion of privacy as a Class A misdemeanor. Ind.Code § 35–46–1–15.1(1). Dixon first argues that he did not violate the protective order because he did not have sufficient notice of the order. He claims that the only evidence that he knew of the protective order was the hearsay testimony of Officer Gomez regarding Bruno's claims that she gave Dixon the order. However, it is clear from Officer Gomez's testimony that he informed Dixon of the protective order and advised Dixon that he was not to return to Bruno's residence. Regardless of whether Bruno actually gave Dixon a copy of the protective order, Officer Gomez explicitly gave Dixon oral notice of the order and, in particular, the provision that ordered Dixon to stay away from Bruno's residence. Dixon's return to the home just hours later indicates that he knowingly or intentionally violated the protective order. *See Hendricks v. State*, 649 N.E.2d 1050, 1052 (Ind.Ct.App.1995) (defendant was convicted for invasion of privacy for knowingly or intentionally violating a protective order after he had been orally notified of the protective order by police).

Dixon next argues that, "[T]he protective order does not exclude [Dixon] from the residence." Appellant's Br. p. 5. However, the protective order against Dixon provides, "The Respondent is ordered to stay away from the residence ... of the Petitioner." State's Ex. 1, p. 3. Thus, Dixon's argument fails.

■ Finally, Dixon claims that Bruno consented to his presence at the home. Dixon cites the Model Penal Code [5] for the proposition that the consent of the victim to the conduct charged is a defense if such consent negates an element of the offense or precludes that infliction of the harm or evil sought to be prevented by the law defining the offense. However, lack of consent is not an element of invasion of privacy, and there is no element of that offense that Bruno's consent would negate. *See* I.C. § 35–46–1–15.1. Nor would Bruno's alleged consent preclude the infliction of violence the statute seeks to prevent. Specifically, Bruno's alleged consent does not prevent violence nor does it preclude the violation of a court order.

■ Furthermore, Indiana Code § 34–26–5–11 provides, "If a respondent is excluded from the residence of a petitioner or ordered to stay away from a petitioner, an invitation by the petitioner to do so does not waive or nullify an order for protection." When determining whether a party committed the act of invasion of privacy identified in Indiana Code § 35–46–1–15.1, we do not consider whether the victim knowingly ignored the protective order but, rather, whether the defendant knowingly violated the protective order. *See* Ind.Code § 34–26–5–11. The protective order is between Dixon and the State, not Dixon and Bruno. Thus, even if Bruno had invited Dixon to the residence, Dixon would still have been in violation of the State's protective order against him. *See id.* Officer Gomez testified that he informed Dixon of the protective order and advised him that pursuant to the protective order, he was not to return to the home. Dixon, however, returned to the home later that same day, in violation of the protective order. Thus, there was suf-

**5.** Model Penal Code and Commentaries part    I, art. 2, § 2:11 (1985).

ficient evidence for the trial court to convict Dixon of invasion of privacy.

Affirmed.

ROBB, J., concurs.

SULLIVAN, J., concurs in result.