Jeffrey THARP, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0905–CR–394.

Court of Appeals of Indiana.

Feb. 18, 2010.

Transfer Granted May 13, 2010.

---

Joel M. Schumm, Appellate Clinic, Indiana University of Law—Indianapolis, Indianapolis, IN, Attorney, Shannon White, Legal Intern for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ann L. Goodwin, Special Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Jeffrey Tharp appeals his conviction of invasion of privacy.[1] Because the State did not prove Tharp knew he was subject to an active order of protection, we reverse his conviction. Although the point is now moot, we also note the trial court erred by delegating to the probation department its authority to set terms and conditions of Tharp's probation.[2]

### FACTS AND PROCEDURAL HISTORY

Tharp has dated Lisa Pitzer at various times, and they have a daughter together. In October 2008, Pitzer petitioned for a protective order against Tharp. Pitzer was not in contact with Tharp at the time, but her roommate wanted her to get a protective order because she did not want Tharp on the property. A protective order was issued *ex parte*. It is file-stamped October 9, 2008 and was to be in effect until October 1, 2010.

Because Pitzer did not know where Tharp lived, she provided his mother's address. A "Sheriff's Return of Service" indicates an officer was "unable to serve this Notice of Claim" because Tharp had moved. (State's Ex. 2.) At some point,

---

1. Ind.Code § 35–46–1–15.1.

2. We heard oral argument on January 14, 2010, in our courtroom. We commend counsel for the quality of their advocacy.

Pitzer attempted to have the protective order dismissed, and thereafter she believed it was no longer in effect.

On February 16, 2009, Pitzer and Tharp were going to buy shoes for themselves and their daughter. Tharp was driving when police stopped him for a traffic infraction. During the stop, officers learned Tharp's license was suspended, he had an active warrant for his arrest, and there was a protective order against him in favor of Pitzer. The officers radioed the communication control operator, who told them the protective order was valid and had been served on Tharp. Pitzer and Tharp both told the officers they were aware of the protective order, but believed it "had been vacated and was no good." (Tr. at 23.)

Tharp was charged with invasion of privacy and driving while suspended,[3] both Class A misdemeanors. At his bench trial Pitzer testified she got a protective order in October 2008, but she thought it had been "dropped" before Tharp was arrested. (*Id.* at 30.) She testified she had told Tharp about the protective order "a couple of times" prior to his arrest, and the first time was around December 2008. (*Id.* at 32.) However, she also told him she thought the order had been "uplifted." (*Id.* at 35.) She had not provided him with a copy of the order, but had explained to him that it ordered "no contact." (*Id.*) Pitzer did not realize the order was still valid until Tharp was arrested. After the arrest, Pitzer petitioned to have the protective order dismissed, and the court did so on February 18, 2009.

Tharp testified he did not know about the protective order until he was pulled over. He claimed he never received a copy of it because, although he had been living with his mother in October 2008, he moved out near the end of the month.

The trial court found Tharp guilty of both charges and sentenced him to concurrent terms of 128 days with 120 days suspended to probation.[4] A separate "Order of Probation" was entered the same day. (Appellant's App. at 26.) The order lists twelve standard conditions of probation. Under the heading "Special Conditions," the court.wrote in "Court leaves terms and conditions of probation up to probation dept." (*Id.*)

## DISCUSSION AND DECISION

Tharp raises three arguments, which we consolidate and restate as: (1) whether there was insufficient evidence to support his conviction of invasion of privacy, and (2) whether the trial court erred by delegating its authority to set terms and conditions of his probation to the probation department.

### 1. *Sufficiency of Evidence*

When reviewing the sufficiency of evidence, we do not reweigh evidence or judge the credibility of witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind.2005). We consider only the evidence favorable to the verdict and the reasonable inferences that may be drawn therefrom. *Id.* We will affirm if a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

The State was required to prove Tharp knowingly or intentionally violated a protective order. Ind.Code § 35–46–1–15.1. Tharp argues he did not knowingly or intentionally violate the protective order because he was not served with the order,

**3.** Ind.Code § 9–24–19–2.

**4.** Tharp admitted at trial that his license was suspended and he does not challenge that conviction on appeal.

and although Pitzer told him about it, she also told him it was no longer in effect.

"If it appears from a petition for an order for protection ... that domestic or family violence has occurred," the trial court may "without notice or hearing, immediately issue an order for protection ex parte." Ind.Code § 34–26–5–9(a). A court issuing an order of protection must deliver the order to the county sheriff for service. Ind.Code § 34–26–5–9(d).

The State argues it did present evidence Tharp was served with the order: Officer Jason Thomas testified the communication control operator told him it had been served. That statement, without more, does not prove Tharp was served. *Cf. Dixon v. State,* 869 N.E.2d 516, 519–20 (Ind.Ct.App.2007) (officer testified at trial that he personally informed the defendant of the protective order). The State presented no testimony based on personal knowledge, nor did it admit any documentation of the fact that Tharp was served.[5] Therefore, the State did not prove Tharp was served with the protective order.

The State argues Tharp bore the burden of persuasion on the issue of the lack of service, citing *LePore v. Norwest Bank Indiana, N.A.,* 860 N.E.2d 632 (Ind.Ct. App.2007). Norwest obtained a default judgment against LePore. LePore later sought to set aside the judgment, arguing he had not received service of process. We stated the standard of review as follows:

In general, we review a trial court's denial of a motion to set aside judgment for an abuse of discretion, and in so doing, determine whether the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment. However, the existence of personal jurisdiction over a defendant is a question of law. Thus, we review a trial court's determination regarding personal jurisdiction *de novo.* A plaintiff is responsible for presenting evidence of a court's personal jurisdiction over the defendant, but the defendant ultimately bears the burden of proving the lack of personal jurisdiction by a preponderance of the evidence, unless that lack is apparent on the face of the complaint.

*Id.* at 634 (citations omitted).

*LePore* is not on point, as Tharp was not trying to set aside the protective order. Tharp was prosecuted for violating the order. Service or lack thereof goes to Tharp's *mens rea,* and the State bears the burden of proof on that issue. *See* Ind. Code § 35–46–1–15.1 (a person who *knowingly* or *intentionally* violates a protective order commits invasion of privacy); *Scruggs v. State,* 883 N.E.2d 189, 191–92 (Ind.Ct.App.2008) (State must prove *mens rea* beyond a reasonable doubt), *reh'g denied, trans. denied.*

Alternatively, the State argues Pitzer's oral statement that there was a "no contact" order was sufficient notice. (Tr. at 35.) Although Tharp agrees that oral notice can suffice, he contends the notice must come from an agent of the State. Both parties rely on *Hendricks v. State,* 649 N.E.2d 1050 (Ind.Ct.App.1995), and *Dixon.*

In *Hendricks,* the Mercado family obtained an emergency protective order

---

5. Moreover, we note that while Officer Thomas' testimony may have been admissible for the limited purpose of explaining his course of conduct, it was inadmissible hearsay if used to prove Tharp had been served. *See Dixon v. State,* 869 N.E.2d 516, 519 (Ind.Ct. App.2007) (officer's testimony that protected person said she gave Dixon a copy of the protective order was admissible to explain the officer's course of conduct, but not to prove the truth of the protected person's statements).

against Hendricks. Six days after the order was issued, Hendricks called the Mercado home. Bernadette Mercado informed him of the protective order and told him he was not to have any contact with the family. Later that day, Hendricks called the Mercado home again. An officer was present at the home and spoke to Hendricks. The officer told Hendricks of the protective order and its parameters. The next day, Hendricks came within 1000 feet of Altimease Mercado, in violation of the order. Hendricks was convicted of invasion of privacy. He appealed, arguing he did not have notice of the protective order, but we affirmed.

In *Dixon*, Demetrice Bruno obtained a protective order against Dixon. Later, an officer was dispatched to Bruno's home, where Bruno and Dixon were engaged in a verbal dispute. The officer performed a warrant check and discovered there was a protective order against Dixon, but Dixon had not been served with it. Bruno showed a copy of the order to the officer and told him she had previously given Dixon a copy. The officer advised Dixon that he had been served and was not to come back to Bruno's residence. Later that day, Dixon returned, and he was arrested.

Dixon was convicted of invasion of privacy, and on appeal, he argued he did not have sufficient notice of the protective order. We affirmed:

> [Dixon] claims that the only evidence that he knew of the protective order was the hearsay testimony of Officer Gomez regarding Bruno's claims that she gave Dixon the order. However, it is clear from Officer Gomez's testimony that he informed Dixon of the protective order and advised Dixon that he was not to return to Bruno's residence. Regard-

less of whether Bruno actually gave Dixon a copy of the protective order, Officer Gomez explicitly gave Dixon oral notice of the order and, in particular, the provision that ordered Dixon to stay away from Bruno's residence. Dixon's return to the home just hours later indicates that he knowingly or intentionally violated the protective order.

*Dixon*, 869 N.E.2d at 520.

The State argues these cases demonstrate that oral notice is sufficient. Tharp notes Hendricks and Dixon were not arrested and charged for contact with the protected person until after they received notice from an officer. If notice from a protected person were sufficient, the officers could have arrested Hendricks and Dixon upon their first contact with the police. However, neither opinion addressed whether notice from the protected person alone would have been sufficient.

We conclude the exception recognized in *Hendricks* and *Dixon* should be narrowly construed to require notice from an agent of the State. Service of a protective order is required by Ind.Code § 34–26–5–9(d). In fact, the general rule in civil cases, as was Pitzer's petition for a protective order, is that jurisdiction of the person is acquired by the service of process. *See* Ind. Trial Rule 4(A); *Idlewine v. Madison County Bank & Trust Co.*, 439 N.E.2d 1198, 1200 (Ind.Ct.App.1982). The facts of this case highlight the importance of service. Although Pitzer told Tharp about the protective order, she also erroneously told him it was no longer in effect. Tharp should not have to rely on information from a lay person who is not knowledgeable about the status of a legal proceeding.

At oral argument, the State argued various facts put Tharp on inquiry notice of the protective order.[6] The State offers no

---

6. In addition to Pitzer's statements to Tharp about the protective order, the State notes

authority for the proposition that a person may be on inquiry notice of a protective order and have an affirmative obligation to verify whether one has been issued. As Tharp noted at oral argument, placing a burden on a person to inquire about the existence of a protective order might require the person to check multiple courts in multiple counties. Such a burden would undermine the importance of service, and we decline to hold Tharp had a burden to investigate whether he was subject to a protective order. Because the State presented insufficient evidence that Tharp had notice of an active order of protection, we reverse his conviction of invasion of privacy.

### 2. *Conditions of Probation*

Tharp's argument that the trial court erred by delegating to the probation department authority to set terms and conditions of his probation is moot because Tharp's probationary period presumably has ended.[7] We generally dismiss cases that are moot. *M.Z. v. Clarian Health Partners*, 829 N.E.2d 634, 637 (Ind.Ct.App. 2005), *trans. denied.* "However, a moot case may be decided on its merits when it involves questions of great public interest that are likely to recur." *Id.* We agree with Tharp that this issue is significant and may evade review because probationary periods are often relatively short. Therefore, we address this issue.[8]

Tharp relies on *Lucas v. State*, 501 N.E.2d 480 (Ind.Ct.App.1986). On August 15, 1983, Lucas was sentenced to five years, with three years suspended. When he was released from incarceration, Lucas was given a document dated August 14, 1984. It was titled "Order of Probation" and was signed by Lucas and a probation officer. However, it did not have a file-stamp or the signature of the judge. The "Order of Probation" prohibited Lucas from possessing a firearm, but that condition was not included in the sentencing order.

On October 17, 1985, a petition to revoke probation was filed, which alleged Lucas had violated a condition of his probation by possessing a firearm. Lucas' probation was revoked, and he appealed. We held his probation could not be revoked because the condition was not given to him in writing at the time of sentencing:

> Whenever a court places a person on probation, the court shall specify in the record the terms of probation, Ind.Code section 35–38–2–1(a), and shall give that person a written statement of the terms of probation. Indiana Code section 35–38–2–2(b).[9] In *Disney v. State* (1982), Ind.App., 441 N.E.2d 489, we held that these statutes require the sentencing court to enter the conditions of probation on the record *at the sentencing*, and to give the person being placed on pro-

---

Pitzer's testimony that Tharp thought "that the court system slapped it, put one on against us like they did this last time and it wasn't—he had no idea that I did it." (Tr. at 36.) The State suggests this testimony indicates Tharp was aware there was a protective order against him, but thought it was in connection with another case instead of something that had been initiated by Pitzer. Finally, the State notes circumstantial evidence that Tharp was living at his parents' address when the sheriff attempted to serve the order there.

7. Tharp was sentenced to 120 days of probation on April 2, 2009, and therefore the probationary period presumably ended on July 31, 2009.

8. As we address this issue solely to provide guidance for future cases, we need not discuss the State's argument that any error was harmless.

9. This provision is now codified at Ind.Code § 35–38–2–2.3(b).

bation a written statement of the conditions of his probation *at the time of sentencing.*

*Id.* at 481 (emphasis in original).

In accordance with *Lucas,* the trial court should have imposed all conditions when Tharp was sentenced instead of giving the probation department the option to impose additional conditions.

## CONCLUSION

The State provided insufficient evidence that Tharp knowingly violated the protective order. Therefore, we reverse Tharp's conviction of invasion of privacy. Furthermore, the trial court should not have given the probation department authority to impose additional conditions of probation.

Reversed.

DARDEN, J., and KIRSCH, J., concur.