**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Feb 28 2014, 9:04 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BARBARA J. SIMMONS**
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DEION TAYLOR, | ) |
| Appellant-Defendant, | ) |
| vs. | ) No. 49A05-1307-CR-340 |
| STATE OF INDIANA, | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven J. Rubick, Judge Pro Tem
Cause No. 49F10-1303-CM-20511

**February 28, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Defendant, Deion J. Taylor (Taylor), appeals his conviction of invasion of privacy, a Class A misdemeanor, Ind. Code § 35-46-1-15.1.

We affirm.

## ISSUE

Taylor raises one issue on appeal, which we restate as the following: Whether the State presented sufficient evidence to support Taylor's conviction of invasion of privacy beyond a reasonable doubt.

## FACTS AND PROCEDURAL HISTORY

At the end of 2009, Taylor was convicted of burglary after he broke into the home of his father, Michael Taylor (Michael) in Indianapolis, Indiana. As a result, a no-contact order (Order) was issued on December 1, 2009, which ordered Taylor to have no contact with Michael. During Taylor's sentencing hearing on February 23, 2010, the trial court reaffirmed the Order. Taylor was incarcerated for three years. Upon his release, Taylor was advised that the Order was still in effect and that he was to have no contact with Michael as a condition of his probation.

On March 15, 2013, Michael observed a black GMC Yukon parked on the corner of his street. Prior to this, Michael received information that Taylor was driving a black Yukon and had been watching his home. When Michael drove away from his house, the driver of the Yukon followed suit. As Michael neared an intersection, he saw the Yukon approaching from the other direction, making "a dash like it was going to come out and

ram [him]." (Transcript p. 6). Michael swerved to avoid a collision and perceived that the driver of the Yukon "appeared to [him] to be [Taylor]." (Tr. p. 6).

On April 1, 2013, the State filed an Information, charging Taylor with Count I, criminal recklessness, a Class A misdemeanor, I.C. § 35-42-2-2; and Count II, invasion of privacy, a Class A misdemeanor, I.C. § 35-46-1-15.1. On June 21, 2013, the trial court conducted a bench trial. At the close of the evidence, the trial court found Taylor not guilty of criminal recklessness but entered a verdict of guilty as to Count II, invasion of privacy. Immediately thereafter, the trial court sentenced Taylor to serve sixty days in the Marion County Jail.

Taylor now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Taylor claims that there is insufficient evidence to sustain his conviction of invasion of privacy. Our standard for reviewing whether there is sufficient evidence to support a conviction is well-established. We will consider only the evidence and any reasonable inferences derived therefrom that are supportive of the verdict, construing any conflicting evidence in favor of the trial court's ruling. *Norwood v. State*, 938 N.E.2d 1209, 1210 (Ind. Ct. App. 2010). We do not reweigh evidence or assess the credibility of witnesses. *Id.* We will uphold "the conviction unless 'no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.'" *Id.* (quoting *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)). The evidence need not "overcome every reasonable hypothesis of innocence"; rather, it "is sufficient if an inference may reasonably be drawn from it to support the verdict." *Id.*

3

Indiana law provides that an individual commits an invasion of privacy if he "knowingly or intentionally violates . . . a no contact order issued as a condition of probation." I.C. § 35-46-1-15.1(6). In this case, it is undisputed that a valid no-contact order was in place and that Taylor was aware that he was required to adhere to the Order as a condition of his probation. However, Taylor asserts that the evidence is insufficient to prove that his actions constitute a violation of the Order.[1] In finding Taylor guilty, the trial court stated "that a parent is in a unique position to recognize one's child; and [Michael] positively identified [Taylor] as the occupant in that [Yukon]. . . . [Taylor]'s presence in the vehicle in proximity to [Michael]'s home is sufficient to establish [i]nvasion of [p]rivacy." (Tr. p. 21).

We do not disturb the trial court's finding that Taylor was, in fact, the driver of the black Yukon and that he had been watching Michael's house. However, the evidence must establish that Taylor's conduct was actually proscribed by the Order. Taylor contends that "[e]ven if [he] had been driving the black Yukon vehicle, he did not stop to acknowledge [Michael] in any manner. There was no evidence presented at trial that [Taylor] attempted to gesture or speak to [Michael]." (Appellant's Br. p. 8). Although Taylor cites no case law in support of his position, he maintains that his conviction warrants reversal because he "did not have any contact or communication with [Michael] that day. He did not harass, annoy, telephone, contact, or directly or indirectly communicate with [Michael]." (Appellant's Br. p. 7).

---

[1] During the bench trial, the trial court took judicial notice of the Order, but it was not admitted into evidence. Thus, the Order is not included in the record for appellate review.

4

Typically, no-contact orders stipulate that a defendant is restricted from acts such as harassment, stalking, and making threats to the protected individual. *See Norwood*, 938 N.E.2d at 1211. Defendants are also usually restrained from visiting locations where they know the protected individual will be. *See Dixon v. State*, 869 N.E.2d 516, 519-20 (Ind. Ct. App. 2007). Although we are unable to review the Order in order to ascertain what, specifically, Taylor was precluded from doing, Indiana Code section 35-38-2-2.3(a)(18) provides that, "[a]s a condition of probation, the [trial] court may require a person to . . . [r]efrain from any direct or indirect contact with an individual." Thus, we will uphold Taylor's conviction if there is evidence to establish that he had any direct or indirect contact with Michael.

In *Wright v. State*, 688 N.E.2d 224 (Ind. Ct. App. 1997), this court stated,

> Contact is defined as "establishing of communication with someone" or "to get in communication with." Communication occurs when a person makes something known or transmits information to another. Further, communication may be either direct or indirect and is not limited by the means in which it is made known to another person.

*Id.* at 226 (internal citations omitted) (quoting WEBSTER'S DICTIONARY 249 (10th ed. 1993)). Although we have established that communication is a key element of "contact," we realize that the term encompasses additional meanings. In re-visiting the dictionary, we find that "contact" is also defined as an "immediate proximity or association." DICTIONARY.COM, http://dictionary.reference.com/browse/contact (last visited Feb. 17, 2014). Here, despite his knowledge that he was to have no contact with Michael, Taylor drove to a place where he knew Michael would be, loitered on the corner of Michael's street, and surveyed Michael's house and his activity. Then, as Michael drove away,

5

Taylor immediately followed and nearly caused a collision. Accordingly, we find there is sufficient evidence of Taylor's immediate proximity to Michael to establish that Taylor knowingly or intentionally violated the condition of his probation that required him to have no contact with Michael.

## CONCLUSION

Based on the foregoing, we conclude that there is sufficient evidence to uphold Taylor's conviction of invasion of privacy.

Affirmed.

VAIDIK, C. J. and MAY, J. concur