# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 03 2015, 7:11 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Glen E. Koch, II
Boren Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher Keen, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 3, 2015 <br><br> Court of Appeals Cause No. <br> 55A01-1412-CR-536 <br><br> Appeal from the Morgan Superior Court <br><br> The Honorable Jane S. Craney, Judge <br><br> Trial Court Cause No. <br> 55D03-1403-CM-318 |

**Barnes, Judge.**

# Case Summary

[1] Christopher Keen appeals his conviction for Class A misdemeanor invasion of privacy. We reverse.

# Issue

[2] Keen raises two issues. The sole issue we need address is whether there is sufficient evidence to sustain Keen's conviction.

# Facts

[3] In February 2014, Keen's marriage to Emily Keen was dissolved. They have two children from the marriage, R.K. and D.K. In the dissolution decree, Emily was granted primary physical custody of the children, and Keen was granted standard visitation in accordance with the Indiana Parenting Time Guidelines. This meant the children stayed with Keen every other weekend, but Keen and Emily agreed that Keen could call and request to see the children at any time.

[4] During the dissolution proceedings, a protective order was issued against Keen for Emily's benefit. The order stated that Keen "was prohibited from harassing, annoying, telephoning, contacting or directly or indirectly communicating with [Emily], except: This order is not to interfere with visitation of children." Ex. 1, p. 3. The order was entered on August 21, 2013, and expired on August 15, 2015.

On the afternoon of Tuesday, March 4, 2014, Keen drove with his sister to Emily's house in Martinsville. Keen had parenting time with the children on the previous weekend but they had stayed with him on Monday as well on this occasion per the parties' agreement, and Keen took them to school on Tuesday morning. Keen was at Emily's house for two reasons. First, he wanted to make sure that the children arrived safely at the house after school, because he had not yet had contact with Emily regarding whether anyone would be home at that time to meet the children. Second, he wanted to deliver to Emily a pro se request for an "emergency" hearing regarding change of custody of D.K. and R.K.; both Keen and Emily were unrepresented by counsel at the time. Ex. A. When Keen arrived at the house, Emily's mother went out to talk to him while Emily watched from inside the house. Keen asked Emily's mother to give the motion to Emily.

Meanwhile, Emily contacted police to tell them that Keen was violating the protective order. After an officer arrived on the scene, Keen told him that he was seeking a change of custody because he believed Emily was using methamphetamine and that the children lacked adequate bedding and food in Emily's house. The officer did not observe any signs that Emily was using methamphetamine and upon inspection believed there to be adequate bedding and food in the house.

The State charged Keen with Class A misdemeanor invasion of privacy. After a bench trial, Keen was convicted as charged. Keen now appeals.

## Analysis

Keen challenges the sufficiency of the evidence supporting his conviction. When reviewing such a claim, we neither reweigh the evidence nor judge the credibility of the witnesses. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). Also, we will consider only evidence supporting the conviction along with any reasonable inferences to be drawn from that evidence. *Id.* We will affirm if there is substantial evidence of probative value to prove every element of the offense such that a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt. *Id.*

In order to convict Keen of invasion of privacy as charged, the State was required to prove that he knowingly or intentionally violated a protective order to prevent domestic or family violence. *See* Ind. Code 35-46-1-15.1(1). Keen contends he did not violate the protective order because his contact with Emily was related to parenting time and child custody; i.e., he was making sure that they arrived safely at Emily's house after school that day, and he was delivering a motion for change of custody to her. He notes that the protective order specifically provided that it was "not to interfere with visitation of children." Ex. 1, p.3. Additionally, the statute governing the issuance of protective orders in domestic or family violence situations states, "An order for custody, parenting time, or possession or control of property issued under this chapter is superseded by an order issued from a court exercising dissolution, legal separation, paternity, or guardianship jurisdiction over the parties." I.C. § 34-26-5-9(g). Keen asserts that this statute makes clear that child custody and

parenting time orders issued by a dissolution court take precedence over a protective order.

[10] We first address Keen's claim that he was permitted to go to Emily's house to ensure the children got home safely from school. We agree that such conduct did not violate the protective order. The protective order prohibited Keen from "harassing, annoying, telephoning, contacting or directly or indirectly communicating with [Emily]." It did *not* prohibit Keen from coming within a certain distance of Emily or her residence. There likewise is no evidence that this conduct of Keen was intended as any sort of "communication" with or "contacting" of Emily.

[11] As for the possibility that being near Emily's house could have been "harassing" or "annoying" to her, there is a complete absence of evidence that Emily found it to be so. She agreed that Keen was merely at the house to verify that the boys made it home safely after school and that she or someone was at home to meet them. In fact, she testified, "I think it's normal for a good dad to drive by and . . . to make sure that there's somebody there to get their kids." Tr. p. 19. The State correctly argues that Emily could not consent to Keen violating the protective order. *See Dixon v. State*, 869 N.E.2d 516, 520-21 (Ind. Ct. App. 2007). Thus, it contends Emily's not being troubled by Keen's conduct is irrelevant. *Dixon*, however, concerned violation of a protective order prohibiting the defendant from going to the protected person's residence, and the protected person having invited the defendant to the residence. *Id.* There

was no question in that case that the defendant in fact violated the terms of the protective order by going to the residence.

[12] Here, by contrast, Keen's act of going to Emily's residence did not by itself violate the terms of the protective order. In *VanHorn v. State*, 889 N.E.2d 908, 912-13 (Ind. Ct. App. 2008), *trans. denied*, we held that parking on a public street outside a private residence does not constitute "harassment" within the meaning of the criminal stalking statute, Indiana Code Section 35-45-10-5. That is essentially what Keen is accused of doing here—he and his sister parked near the mailbox on the street outside Emily's house. Similarly, the statutory definition of "harassment" for stalking purposes requires proof that the victim "actually" suffers emotional distress because of the defendant's conduct. I.C. § 35-45-10-2. Emily's testimony directly conflicts with any notion that she was distressed by Keen's conduct. Additionally, there is no evidence that Keen had ever before engaged in conduct such as this.

[13] There is no definition of the word "annoying" anywhere in the Indiana Code. *See Morgan v. State*, 22 N.E.3d 570, 574 (Ind. 2014) (addressing lack of definition of word "annoys" as used in public intoxication statute). In any event, the language to be used in protective orders is not defined by statute. Still, we do not believe it is too much to ask that if a protective order prohibits "harassing" or "annoying" behavior, there must be some evidence that the protected person indeed was actually harassed or annoyed by the defendant before the defendant can be convicted of having violated the order. There is absolutely no such evidence here.

[14] We now address the State's contention that Keen violated the protective order by serving a copy of his pro se request for an emergency change of custody upon Emily, or more specifically upon Emily's mother for delivery to Emily. We decline to hold that Keen's actions in this regard constituted criminal behavior.

[15] First, Keen's motion did not constitute "communication" with Emily. The motion was in the form of a letter addressed to the dissolution court judge and stated in its entirety, "I would like to set up a court date to establish emergency custody for [R.K.] and [D.K.]." Ex. A. The letter, which was file-stamped on March 4, 2014 by the dissolution court, was not addressed to Emily. However, Keen was required by Indiana Trial Rule 5(A) to serve a copy of the motion upon Emily. Moreover, because both Keen and Emily were unrepresented by counsel,[1] service could not be conducted through an attorney under Trial Rule 5(B). Rather, service had to be made upon Emily personally. *See Moore v. Terre Haute First Nat'l Bank*, 582 N.E.2d 474, 477 (Ind. Ct. App. 1991). And, Trial Rule 5(B) provides for service by personal delivery, by mail, or by fax or email if a party has consented to serve by fax or email. There is no evidence that service by fax or email had been consented to by Emily or that it was even a possibility in this case. As for service by regular mail versus personal delivery,

---

[1] The dissolution decree states that Emily appeared pro se at the final hearing.

given the emergency request in Keen's motion, it was not unreasonable for him to choose to deliver the motion personally than mail it.

[16] It is possible that delivery of Keen's motion to Emily's house could be construed as "contacting" her. Regardless, we cannot conclude that Keen should be convicted of invasion of privacy for this conduct. Keen was entitled to seek modification of the dissolution decree's child custody order pursuant to statute. *See* I.C. §§ 31-17-2-3, 31-17-2-21. There was no restriction upon his ability to do so in either the dissolution decree or protective order. Likewise, we re-emphasize that there was nothing in the protective order prohibiting Keen from going to Emily's residence in order to deliver a copy of the motion, or for any other reason. He also has not been found to be an unfit parent, and so he had constitutional rights related to the upbringing of his children. *See Sills v. Irelan*, 663 N.E.2d 1210, 1213 (Ind. Ct. App. 1996) ("A parent's interest in companionship, care, custody, and management of his or her children is a basic civil right protected by the Fourteenth Amendment.") (citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212-13 (1972)). Finally, Keen was mandated by Trial Rule 5, as described above, to serve the motion upon Emily. Given all of these considerations—Keen's exercising of his statutory and constitutional rights in accordance with rules promulgated by the Indiana Supreme Court—we decline to hold that Keen knowingly or intentionally violated the protective order by personally delivering upon Emily a copy of his request for an emergency hearing regarding custody of his children. We also re-

emphasize that there was no prohibition in the protective order against merely approaching Emily or her residence.

[17] The State seems to assert that Keen's motion for change of custody was frivolous because the police officer who responded to the scene did not believe Emily was abusing methamphetamine and thought there was adequate food and bedding in the house, contrary to Keen's reasons for filing the motion as stated to the officer. Thus, the State claims the motion was a device by which Keen wanted to evade the protective order. We believe, however, that the validity of the motion must be addressed in the dissolution court after a proper hearing. If the motion is deemed to be frivolous after such a hearing, then appropriate action may be taken at that time.

## Conclusion

[18] We hold that the undisputed evidence regarding Keen's conduct in this case fails to support his conviction for invasion of privacy. We reverse.

[19] Reversed.

Kirsch, J., and Najam, J., concur.