# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 16 2019, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Supervising Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Joshua Bartley,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 16, 2019

Court of Appeals Case No.
18A-CR-1977

Appeal from the Marion Superior Court

The Honorable Patrick Murphy, Magistrate

Trial Court Cause No.
49G16-1803-CM-8503

**Crone, Judge.**

## Case Summary

Joshua Bartley appeals his conviction by a jury of class A misdemeanor invasion of privacy. We address two issues raised by Bartley and the State: whether the State presented sufficient evidence to support a finding of guilt and whether this case is moot. We affirm.

## Facts and Procedural History

The facts favorable to the conviction are that Joshua Bartley and Patricia ("Tricia") Bartley had been married for some years and had three children together, ages twenty-three, seventeen, and thirteen. On January 17, 2018, after the two had become estranged, Tricia filed a petition for and obtained an ex parte protective order against Bartley. The order was issued after the trial court found, inter alia, that Tricia had shown sufficient evidence that domestic or family violence, stalking, or a sex offense had occurred which justified a protective order and that Bartley represented a credible threat to Tricia's safety. The order prohibited Bartley from "harassing, annoying, telephoning, contacting, or directly or indirectly communicating with" Tricia. State's Ex. 1. Tricia temporarily moved in with her oldest child, B.R., and her husband in late January 2018.

On January 21, 2018, Indianapolis Metropolitan Police Department Officer Brian Linares made contact with Bartley. While running a check on Bartley's name, Officer Linares discovered that a protective order had been issued against Bartley. Officer Linares served Bartley with that order. Bartley acknowledged

his receipt of the order and that it had been served. During a five- to ten-minute conversation, Officer Linares told Bartley that he was not to have contact with Tricia.

[4] Before the protective order was issued, Tricia often used B.R.'s phone to communicate with Bartley. She ceased contact with Bartley in any form after the order was obtained. On January 28, 2018, Bartley sent the following series of text messages to B.R.'s cell phone:

> Y'all may want to look at this I was never served. have kids call me which is in my rights.

> Look at restraining order things checked contradict what was written.

> Just got a paper from papaw stating he never saw hands put on her the order falling apart and I have pics date stamps of gioia [sic] when I didn't have her eatin alive by fleas.

> Have kids call me.

> Look up a parent and ppl helping cutting off all access to other parent contact to children it is felony.

State's Ex. 3-5.

[5] On February 7, 2018, Tricia and Bartley appeared in court for a hearing on her original petition for a protective order. Subsequently, the trial court entered a second protective order. Although the second order was titled, "EX PARTE

ORDER FOR PROTECTION," it was, in fact, inter party. State's Ex. 2. The second order protected designated family and household members, including Bartley's children, and allowed Bartley to contact or communicate with Tricia only for the third-party exchange for visitation of children.

[6] On February 24, 2018, Tricia was shopping at a local Walmart with her mother and younger daughter, A.B. Tricia told A.B. it was time to go, calling her by her nickname, "Sissy." Tr. Vol. 2 at 50. Tricia heard a voice call out from an adjacent aisle, "Sissy?" and immediately recognized it as Bartley's. *Id.* Tricia and A.B. became afraid upon hearing Bartley's voice, and when he appeared in front of them, they locked arms. Bartley headed directly toward A.B., brushing his arm against Tricia as he went to hug his daughter. Tricia admonished Bartley that he was not supposed to be near her. Bartley responded, "I can't help if I see you in a public place." *Id.* at 52. Tricia again told Bartley that he should walk the other way and not initiate contact, and he repeated his previous remark. Tricia notified the store manager, then left the store. She called police and met with an officer to make a report.

[7] The State charged Bartley with one count of class A misdemeanor invasion of privacy based on violations of both protective orders. A jury found Bartley guilty as charged and made two specific findings: (1) that Bartley violated the first protective order by sending texts to a protected person, i.e., Tricia, on January 28; and (2) that Bartley violated the second protective order by initiating contact with a protected person, i.e., Tricia, at a Walmart on February 24. At sentencing, the trial court found Bartley to be indigent and directed that

he not be charged public defender fees. The trial court sentenced Bartley to one year with three hundred fifty-nine days suspended, a psychological evaluation, and eighty hours of community service. Despite the finding of the trial court, Bartley was still assessed a $50 public defender fee.

[8] Bartley filed a timely appeal with this Court. After an extension of time was granted, Bartley filed an appellant's brief raising a single issue regarding the $50 public defender fee. The State filed a motion to dismiss the appeal and remand the case to the trial court for further proceedings on the public defender fee. This Court issued an order holding the appeal in abeyance and remanding the case to the trial court for clarification of the sentencing order. Bartley was further directed to give this Court notice as to whether he wished to proceed with an appeal following the trial court's order on remand. The trial court entered an amended sentencing order crediting Bartley for the public defender fee. Bartley gave notice that he wished to proceed with the appeal and raise an additional issue in an amended brief. This Court granted Bartley's motion to file an amended brief and appendix, and set a due date for the State's brief.[1] Bartley submitted an amended appendix and an amended brief, in which he challenged only the sufficiency of the evidence supporting his conviction.

---

[1] This Court's order granting Bartley's Verified Motion to File Amended Brief for Good Cause also states that "The Clerk of this Court is directed to mark as obsolete in the Odyssey Case Management system the version of Appellant's Brief and Appendix that was filed on December 10, 2018." Consequently, the only Appellant's Brief available to this Court and either party is the current version that was submitted to this Court on March 26, 2019.

# Discussion and Decision

## Section 1 – This appeal is not moot.

[9]     We first address the State's argument that because the claim Bartley raised in his original brief was remedied by the trial court, "his appeal at this juncture is moot." Appellee's Br. at 8-9 n.1. We disagree. Indiana Appellate Rule 47 permits this Court to grant leave for a party to file an amended brief where good cause has been shown. This Court elected to grant Bartley leave to amend his brief and proceed with the appeal after the trial court entered an amended sentencing order. We now address the merits of Bartley's argument.

## Section 2 – The evidence is sufficient to support Bartley's conviction.

[10]    Bartley argues that the evidence was insufficient to sustain his conviction for invasion of privacy. Our standard of review is well settled.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support the conviction. . . . Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, internal quotations, and emphasis omitted).

[11] To sustain a conviction for class A misdemeanor invasion of privacy under Indiana Code Section 35-46-1-15.1(a)(1), the State had to prove that Bartley knowingly violated a protective order to prevent domestic or family violence. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

[12] Bartley first argues that he was not properly served with the first protective order and that he was not sufficiently advised of its specific terms. Indiana courts have held that proper service of an ex parte order is not required to prove that a respondent has knowledge of the order. *See, e.g.*, *Joslyn v. State*, 942 N.E.2d 809, 812 (Ind. 2011) ("It would run contrary to [the statutory purpose for issuing protective orders] if we were to embrace Joslyn's contention that a defendant does not violate the criminal code because of some defect in civil process even where the court had in fact issued a protective order and the defendant in fact knew it had done so."); *Hendricks v. State*, 649 N.E.2d 1050, 1052 (Ind. Ct. App. 1995) (holding that an officer informing a defendant about a protective order and its parameters was sufficient to uphold a conviction); *Dixon v. State*, 869 N.E.2d 516, 520 (Ind. Ct. App. 2007) (holding that regardless of whether an officer served the defendant a physical copy of the protective order, explicit oral notice of the order was enough to show the defendant knowingly violated a protective order). Officer Linares testified that he served

the first protective order on Bartley and had a five- to ten-minute conversation in which he advised Bartley that he could not contact Tricia.

[13] Bartley sent messages clearly meant for Tricia to B.R.'s phone. The subject of those messages further indicate that Bartley had in fact seen a copy of the protective order. We conclude that the State presented substantial evidence of probative value from which the jury could infer that Bartley had knowledge of the first protective order and its terms, and that he violated that order on January 28, 2018.

[14] Next, Bartley argues that while the second protective order barred him from any contact with Tricia, he was permitted to "make arrangements for visitation with [A.B.] and his other children." Appellant's Br. at 14. Bartley, who was in court when the second order was issued, knew that he was not to make contact with Tricia for any reason, except for arranging the third-party exchange for visitation of the children. That is not what happened during the encounter at Walmart, and no reasonable inference can be made to that end based on these facts. Therefore, we affirm.

[15] Affirmed.

Bradford, J., and Tavitas, J., concur.