

**FILED**

Apr 23 2020, 9:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Heather M. Schuh-Ogle
Thomasson Thomasson Long &
Guthrie, P.C.
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Abigail Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:

L.T.

And

S.T. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child
Services,

*Appellee-Petitioner.*

April 23, 2020

Court of Appeals Case No.
19A-JC-2667

Appeal from the Bartholomew
Circuit Court

The Honorable Heather Mollo,
Magistrate

Trial Court Cause No.
03C01-1811-JC-6543

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellants-Respondents, S.T. (Mother) and J.T. (Father) (collectively, Parents), appeal the trial court's adjudication of their minor child, L.T (Child), to be a Child in Need of Services (CHINS).

We affirm.

# ISSUES

Parents present this court with three issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the trial court abused its discretion when it admitted telephonic evidence and evidence of Father's past convictions; and

(2) Whether the trial court erred by adjudicating Child to be a CHINS.

# FACTS AND PROCEDURAL HISTORY

Mother and Father are the biological parents to I.T., born on July 21, 2012, R.A., born on January 5, 2015, E.T., born on November 15, 2016, and L.T., born on September 4, 2018. The Department of Child Services (DCS) became involved with the family prior to L.T.'s birth. In June 2017, I.T., R.A., and E.T. were adjudicated CHINS due to physical abuse to I.T. and domestic violence between the Parents. In its adjudication, the trial court found that I.T. had bruising that was not consistent from a fall from a bicycle but instead was "consistent with an inflicted injury from a belt." (Exh. Vol. p. 49). Father admitted to "whoop[ing]" I.T. as punishment. (Exh. Vol. p. 48). Because the

trial court decided that "the injuries [were] not consistent with reasonable discipline given the child's age of four, the nature of the child's misdeed, and the extent of the bruising on both the child's thigh and buttocks," the court ordered Parents to participate in services. (Exh. Vol. p. 50). By September 2018, Father was allowed to reside back in the home for a trial home visit.

[5] In October 2018, DCS received a report alleging that E.T. had a bruise on her face and bruising on her bottom that was claimed to have been inflicted by Father and that Father used marijuana. After receiving the report, Family Case Manager Kimberly Miller (FCM Miller) visited Maternal Grandmother's home where Mother, E.T. and L.T. were residing for the weekend. FCM Miller observed a bruise on E.T.'s cheekbone, along with bruising on her bottom and thigh. Mother explained to FCM Miller that she was in the other room breastfeeding L.T., while E.T. had climbed out of the pack 'n play and gotten hurt. Mother was unaware of the bruising on E.T.'s bottom, but clarified that E.T. falls a lot. Mother said she planned to return home on Sunday evening.

[6] After speaking with Mother, FCM Miller visited Maternal Grandfather's home where I.T. and R.A. were staying. Besides a faint bruise on R.A.'s face which the child explained as a result from a fall on the stairs, FCM Miller did not observe any physical injuries on the children. FCM Miller was told that Father spanks the children and punches I.T. in "the belly" which "hurt[s]." (Transcript p. 52). After conducting her assessment, FCM Miller called in a "Peds referral," recommending that E.T. receive a full physical and skeletal as

well as a head CT. (Tr. p. 53). Mother agreed to stay with the children at Maternal Grandmother's place until the recommendation could be completed.

[7] On October 30, 2018, Angela Blum, the general pediatrician and chief of pediatric services at MHP Medical Center in Shelbyville (Dr. Blum), examined E.T. at DCS's request. She observed "a bluish green bruise under [E.T.'s] left eye, that ran along the cheekbone, and extended both laterally and medially." (Tr. p. 9). E.T. also had a "multicolored bruise on her right posterior thigh and lateral buttock, just kind of under the diaper area." (Tr. p. 9). Dr. Blum opined that the fall from a pack 'n play was not "the mechanism of injury" likely to have caused E.T.'s injuries. (Ex. Vol. p. 4). Dr. Blum testified that when children fall, they typically sustain injuries to the harder parts of the body; it takes more impact to sustain injuries to soft tissue areas.

[8] On November 1, 2018, FCM Miller met with Mother. During this meeting, Mother stated that a week before Child was born, Father "had picked her up by the arms and thrown her on the couch." (Tr. pp. 54-55). Mother added that the bruises were still visible when she went into labor with Child. She narrated that Father had "shoved her into a tub, with her first pregnancy, and also spoke of [I.T.] having a breast pad shoved in his mouth when he was a baby." (Tr. p. 54).

[9] On November 27, 2018, FCM Miller discussed the allegations with Father. He explained that E.T. was in the pack 'n play, trying to take off her diaper. After having to put the diaper back on several times, Father was getting frustrated

and moved the pack 'n play to another room while he tried to get some sleep. After hearing some noises, he checked on E.T. and found her out of the pack 'n play near the stairs, so he spanked her. He admitted that "he may have used more force than he needed because he didn't want her to fall down the stairs." (Tr. p. 56). Father submitted to a drug screen, which came back negative.

[10] That same day, DCS filed a petition alleging that Child was a CHINS because there was physical abuse in the home directed toward the Child's siblings. The petition also alleged that Father smoked marijuana was abusive towards Mother, had been previously arrested due to harming Mother and Child's older sibling, and the three older siblings had been previously adjudicated CHINS due to physical abuse in April 2017. On January 22, 2019, four days before the factfinding hearing, DCS filed a motion for telephonic testimony to permit Dr. Blum to testify by phone. The next day, Mother filed an objection.

[11] On January 25, 2019, the trial court conducted a factfinding hearing. Prior to the hearing, the trial court granted DCS's motion for Dr. Blum to testify by phone. At the factfinding hearing, Mother admitted that there have been three incidents of domestic violence while she was pregnant—in 2010, 2012, and 2018. Mother noted that, "we've had a lot of no contact orders." (Tr. p. 35). At the time of the hearing, Father had two pending Level 6 felony domestic battery charges. The first Count was due to Father throwing Mother on the couch, with the second Count due to Father allegedly battering E.T. Mother admitted that she had been battered by Father on "multiple occasions." (Exh. Vol. p. 12). Also, at the time of the hearing, protective orders prohibiting

Father to contact Mother and E.T. were in place. Mother had not requested the protective orders as she did not think these were necessary. Father noted that without the protective orders, he and Mother would continue to live together.

[12] At the time of the hearing, Mother and the children were residing with Maternal Grandmother. The ongoing case manager, Brittany Turner (FCM Turner), testified that she was concerned that without the protective order in place, Mother would allow Father to be around the children. Mother is participating in domestic violence services through the other CHINS cases, but she has yet to complete the services. Mother is also participating in individual therapy. Although DCS had put services in place for Father, other than visitation with I.T. and R.A., Father was not willing to participate and insisted that he did not need them. On June 27, 2019, the trial court entered its Order adjudicating Child to be a CHINS.

[13] Parents now appeal. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

## I. *Admission of Evidence*

[14] Parents contend that the trial court abused its discretion by allowing Dr. Blum to testify by phone and by admitting evidence of Father's past domestic violence charges. We review a trial court's admission or exclusion of evidence for an abuse of discretion. *See In re Des.B*, 2 N.E.3d 828, 834 (Ind. Ct. App. 2014). This court will reverse only where the trial court's discretion is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

It is well-established that errors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party. *Id.*

## A. *Telephonic Evidence*

First, Parents argue that the trial court erred in permitting Dr. Blum to testify telephonically during the CHINS factfinding hearing. Admin. R. 14(B) provides as follows:

> [A] trial court may use telephone or audiovisual communications subject to:
>
> (1) the written consent of all the parties, entered on the Chronological Case Summary; or
>
> (2) upon a trial court's finding of good cause, upon its own motion or upon the motion of a party. The following factors *shall* be considered in determining "good cause":
>
>> (a) Whether, after due diligence, the party has been unable to procure the physical presence of the witness;
>>
>> (b) Whether effective cross-examination of the witness is possible, considering the availability of documents and exhibits to counsel and the witness;
>>
>> (c) The complexity of the proceedings and the importance of the offered testimony in relation to the convenience to the party and the proposed witness;

(d) The importance of presenting the testimony of the witness in open court, where the fact finder may observe the demeanor of the witness and impress upon the witness the duty to testify truthfully;

(e) Whether undue surprise or unfair prejudice would result; and

(f) Any other factors a trial court may determine to be relevant in an individual case.

(3) A party or a trial court if it is acting on its own motion *must* give notice of the motion to use telephone or audiovisual telecommunication as follows:

(a) Any motion for testimony to be presented by telephone or audiovisual telecommunication *shall* be served not less than thirty (30) days before the time specified for hearing of such testimony;

(b) Opposition to a motion for testimony to be presented by telephone or audiovisual telecommunication *shall* be made by written objection within seven (7) days after service;

(c) A trial court may hold an expedited hearing no later than ten (10) days before the scheduled hearing of such testimony to determine if good cause has been shown to present testimony by telephone or audiovisual telecommunication;

(d) A trial court *shall* make written findings of fact and conclusions of law within its order on the motion for

testimony to be presented by telephone or audiovisual telecommunication; and

(e) For cause found, a trial court may alter the time deadlines set forth in paragraphs (a) through (c) upon motion made prior to the expiration of the time for the required action.

(Emphases supplied).

[16] DCS does not dispute that its motion was filed less than thirty days before the hearing and that the trial court did not enter written findings of fact and conclusions of law in its order granting DCS's request to present Dr. Blum's testimony via telephone. Clearly, the trial court did not comply with the clear dictates of Admin. R. 14. We therefore conclude that the trial court erred in permitting Dr. Blum to testify telephonically. *See also Matter of R.G.*, 130 N.E. 3d, 1171, 1178 (Ind. Ct. App. 2019), *trans. denied*. However, as DCS presented other evidence of probative value to support the CHINS determination, the trial court's error in this regard is harmless. *See* Ind. Appellate R. 66 (providing that we shall not reverse on appeal if an error's "probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.")

### B. *Father's Prior History*

[17] Next, Parents contend that the trial court abused its discretion by admitting an investigative report attached to a probable cause affidavit of Father's 2010

criminal conviction as the document contained inadmissible hearsay statements.

[18] During the factfinding hearing, DCS moved to admit, over Parents' hearsay objection, Exhibit 7 which was an affidavit of probable cause related to Father's pending criminal charges. Attached to the affidavit—and included in Exhibit 7—was an investigative report narrating statements allegedly made by a DCS caseworker, Dr. Blum, and a nurse. In response to Parents' objection, DCS clarified that the report was relevant and foundational to the criminal charges pending against Father. The trial court overruled the objection and admitted the investigative report included in Exhibit 7.

[19] Hearsay is defined as a statement that "(1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted." Ind. Evidence R. 801(c). Here, the record reflects that the investigative report was admitted to support the reason the State charged Father with domestic battery; it was not admitted for the truth of the statements contained in the report. Accordingly, as the investigative report was not admitted to prove the truth of the matter asserted, it cannot be characterized as hearsay. *See Dixon v. State*, 869 N.E.2d 516, 519 (Ind. Ct. App. 2007) (a statement offered for a purpose other than to prove the truth is the matter asserted is not hearsay).

[20] With respect to Father's 2010 criminal conviction, Parents argue that the evidence amounted to inadmissible character evidence pursuant to Indiana

Rule of Evidence 404(b) as it was admitted solely "to establish a pattern of ongoing domestic violence and physical abuse towards Mother." (Appellant's Br. p. 18).

Indiana courts have found that when children are alleged to be CHINS under Indiana Code section 31-34-1-1, which is the statute relied upon in the present case, a parent's character is a material issue in the proceeding. *Matter of J.L.V., Jr.*, 667 N.E.2d 186, 190 (Ind. Ct. App. 1996). To that end, the court in *Matter of J.L.V., Jr.* reasoned that Indiana Rule of Evidence 405(b) allows admission of specific instances of a parent's character because "a parent's past, present, and future ability to provide sufficient care for his or her child forms the basis for a CHINS adjudication" and "a parent's character is an integral part of assessing that ability." *Id.* at 190-91. *In Matter of Eq.W.,* 214 N.E.3d 1201, 1210 (Ind. 2019), our supreme court agreed with the general proposition that past acts by parents in CHINS proceedings can be relevant, but qualified this practice to "new CHINS filings involving the same parents and children." *See also*, I.C. § 31-34-12-5. The nature of a CHINS proceeding is such that a trial court must consider a broad range of evidence to ensure the State has met its burden in proving its case, including "consider[ing] the family's condition not just when the case was filed, but also when it is heard." *In re D.J.,* 68 N.E.3d 574, 580 (Ind. 2017). As this is the first CHINS proceeding pertaining to Child, we conclude that the trial court properly admitted Father's 2010 criminal conviction.

## II. *CHINS Adjudication*

[22] Parents contend that the trial court abused its discretion in finding Child to be a CHINS. In order to adjudicate a child as a CHINS, DCS must prove by a preponderance of the evidence that:

> (1) The child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent . . . to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) The child needs care, treatment or rehabilitation that:
>
> > (A)      The child is not receiving; and
> >
> > (B)      Is unlikely to be provided or accepted without the coercive intervention of the court.

I.C. § 31-34-1-1. In making its determination, the trial court should consider the family's condition not just when the case was filed, but also when it was heard. *In re S.D.*, 2 N.E.3d 1283, 1290 (Ind. 2014). A CHINS adjudication cannot be based solely on conditions that have ceased to exist. *In re S.A.*, 15 N.E.3d 602, 6011 (Ind. Ct. App. 2014), *trans. denied*. The adjudication must be based on the evidence presented in court and not on the allegations in the pleadings. *Maybaum v. Putnam Co. O.F.C.,* 723 N.E.2d 951, 954 (Ind. Ct. App. 2000). In reviewing a CHINS determination, we do not reweigh evidence or assess witness credibility. *Matter of N.C.*, 72 N.E.3d 519, 523 (Ind. Ct. App. 2017). We consider only the evidence in favor of the trial court's judgment, along with any reasonable inferences arising therefrom. *Id.*

Parents maintain that the trial court erred in adjudicating Child a CHINS because there was no evidence Child is in any danger, or that his needs would go unmet in the absence of the coercive intervention of the trial court. The purpose of a CHINS inquiry is to determine whether a child's circumstances require services that are unlikely to be provided without the intervention of the court, and thus, the focus of a CHINS adjudication is on the condition of the child alone, not on the culpability of one or both parents. *In re N.E.*, 919 N.E.2d 102, 105-06 (Ind. 2010). Nonetheless, "[n]ot every endangered child is a child in need of services, permitting the State's *parens patriae* intrusion into the ordinarily private sphere of the family." *In re S.D.,* 2 N.E.3d at 1287. Rather, a CHINS adjudication under Indiana code section 31-34-1-1 requires proof of three basic elements: the parent's actions or inactions have seriously endangered the child; the child's needs are unmet; and "perhaps most critically," those needs are unlikely to be met unless the State intervenes. *Id*. It is the last element that guards against unwarranted State interference in family life. *Id*. State intrusion is warranted only when parents lack the ability to provide for their children. *Id*. In other words, the focus is on the best interests of the child and whether the child needs help that the parent will not be willing or able to provide. *Id*. Despite a "certain implication of parental fault in many CHINS adjudications, the truth of the matter is that a CHINS adjudication is simply that—a determination that a child is in need of services. *In re N.E.* 919 N.E.2d at 105.

[24] Parents' main contention revolves around the trial court's reliance on Dr. Blum's inadmissible telephone testimony when issuing its Order. However, disregarding Dr. Blum's testimony, there is sufficient evidence in the record to support DCS's CHINS petition by a preponderance of the evidence. The evidence reflects that Parents have a lengthy history of domestic violence in which Father has physically abused Mother. Mother admitted that there have been three incidents of domestic violence while she was pregnant—in 2010, 2012, and 2018. No-contact orders were issued after each incidence and Mother noted that, "we've had a lot of no contact orders." (Tr. p. 35). At the time of the hearing, Father had two pending Level 6 felony domestic battery charges. The first Count was due to Father throwing Mother on the couch, with the second Count due to Father allegedly battering E.T. Mother's bruises were still visible at the time she went into labor with Child.

[25] Father also directed his physical violence toward the children. In 2017, prior to Child's birth, his siblings were adjudicated CHINS after Father had left bruises on I.T. that were not consistent with reasonable discipline. Approximately one month after Father was allowed to reside at the home with the children on a trial home visit basis, E.T. was found to have bruising under her eye, as well as on her bottom and thigh. As a result, Father was charged with domestic battery. Also, FCM Miller was told that Father spanks the children and punches I.T. in "the belly" which "hurt[s]." (Tr. p. 52).

[26] At the time of the factfinding hearing, protective orders were in place prohibiting Father from having contact with Mother and E.T. Mother testified

that she believed these orders to be unnecessary and was not convinced the children were in danger. Father admitted that without the no-contact orders, he and Mother would be living together as a family. FCM Turner informed the trial court that she was concerned that in the absence of a no-contact order, Mother would allow Father to be around the children. While Mother was participating in services through the CHINS cases of the older children, FCM Turner believed that Mother would not participate without a court order.

[27] In light of the family's history of domestic violence and physical abuse of the children, we cannot conclude that the trial court's order is clearly erroneous. Even though the evidence is focused on the other children, we are concerned that with the Child's exposure to domestic violence in the house, the Child's mental health is endangered and without the trial court's coercive intervention, the Child will not receive the protection he needs.

[28] In addition, the Parents also contend that the trial court's Order which adjudicated Child a CHINS pursuant to Indiana Code section 31-34-1-2 is not supported by the evidence. Indiana Code section 31-34-1-2(c) provides that a child is a CHINS if the Child lives in the same household as an adult who has been charged with a domestic battery offense committed against another child living in the home. The evidence reflects that Father was charged with a Count of domestic violence against E.T. while Father was residing with Mother in the home during a DCS-approved trial home visit. As there is a concern that Child will not receive the needed protection without the coercive intervention of the

trial court, we conclude that DCS satisfied the statutory requirements of I.C. § 31-34-1-2 by a preponderance of the evidence.

# CONCLUSION

[29] Based on the foregoing, we hold that the trial court's admission of telephonic testimony amounted to harmless error; the trial court properly admitted the investigative report of Father's 2010 criminal conviction; and the trial court properly adjudicated Child to be a CHINS.

[30] Affirmed.

[31] Mathias, J. concurs

[32] Tavitas, J. concurs in result with separate opinion

| | |
|---|---|
| In the Matter of: L.T.<br>and<br>S.T. (Mother),<br>*Appellant-Respondent,*<br><br>v.<br><br>Indiana Department of Child<br>Services,<br>*Appellee-Petitioner.* | Court of Appeals Case No.<br>19A-JC-2667 |

**Tavitas, Judge, concur in result.**

[33]     I concur with the result reached by the majority.  I respectfully part ways regarding the majority's conclusion that the probable cause affidavit, Exhibit 7, was properly admitted into evidence after it was submitted by DCS in its case in chief and the trial court overruled Parents' objection.

[34]     In its Appellee's Brief, DCS argues: "The investigative report is not hearsay because it was not used for the truth of the matter asserted, but rather to show why Father was charged with the two counts of domestic battery."  Appellee's Brief p. 15.  The majority agrees with DCS and does not address Indiana Evidence Rule 803 in its analysis.  I disagree that the probable cause affidavit

was not used for the truth of the matter asserted. Accordingly, the admission of the document is controlled by Evidence Rule 803.

[35] Indiana Evidence Rule 803(8)(B) specifically prohibits admission of the probable cause affidavit. Rule 803 provides:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> \* \* \* \* \*
>
> (8) Public Records.
>
> (A) A record or statement of a public office if:
>
>> (i) it sets out:
>>
>>> (a) the office's regularly conducted and regularly recorded activities;
>>>
>>> (b) a matter observed while under a legal duty to [observe and] report; or
>>>
>>> (c) factual findings from a legally authorized investigation; and
>>
>> (ii) neither the source of information nor other circumstances indicate a lack of trustworthiness.
>
> (B) Notwithstanding subparagraph (A), the following are not excepted from the hearsay rule:

(i) investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case;

(ii) investigative reports prepared by or for a public office, when offered by it in a case in which it is a party;

(iii) factual findings offered by the government in a criminal case; and

(iv) factual findings resulting from a special investigation of a particular complaint, case, or incident, except when offered by an accused in a criminal case.

[36] Furthermore, the probable cause affidavit contains hearsay within hearsay. Indiana Evidence Rule 805 states: "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." The probable cause affidavit itself is inadmissible hearsay under Evidence Rule 803(8)(B), and the statements of others to the investigative officer, including statements by DCS, are also inadmissible hearsay. Accordingly, the trial court erred in admitting the probable cause affidavit and the hearsay within hearsay statements. *See, e.g., Rhone v. State*, 825 N.E.2d 1277, (Ind. Ct. App. 2005) (holding that the probable cause affidavit was inadmissible), *trans. denied*.

[37] Although the trial erred in admitting the probable cause affidavit, the error was harmless due to the overwhelming evidence that the Child was a CHINS. Accordingly, I concur in result.